# WILLIAM H. W. CUSHMAN *et al.*

## *v.*

## HENRY HAYES.

| | |
|---|---|
| 46 | 145 |
| 124 | 497 |
| 46 | 145 |
| 30a | 22 |
| 46 | 145 |
| 147 | 573 |
| 46 | 145 |
| 74a | 92 |
| 46 | 145 |
| 178 | 114 |
| 178 | 116 |
| 46 | 145 |
| 88a | 548 |
| 46 | 145 |
| 99a | 7 40 |
| 46 | 145 |
| 205 | 7104 |
| 109a | 8636 |

1. CONTRACT—*construction of—warehousemen.* The plaintiff stored corn in the defendants' warehouse, and took from them an agreement as follows: "February 9, 1860; we hereby agree to store ear corn for Henry Hayes till the first of June next, for three cents per bushel; two cents for shelling; and receiving 75 pounds and deliver 58 pounds. If sold before the first of June, we are not to charge for shelling; if not sold by the first of June, we are to charge ½ per cent. per month till it is sold. The corn to be good and merchantable.

     *(Signed,)*   CUSHMAN & VORCE."

*Held,* that the contract contemplated a storage beyond June, 1860.

2. Such a contract would not continue for an indefinite time wholly on the will of the plaintiff.

3. Although the contract provides the corn may remain in store by paying one-half per cent. per month, until the corn is sold, there is nothing in the terms to prevent a termination of the contract by the defendants, on notice, where a necessity for so doing arises.

4. If it becomes necessary for the defendants to bring their business to a close, and they notified the plaintiff to come and settle, and take away his corn, and he failed to comply with the notice, the position of the parties would be analogous to that of pledgor and pledgee, the corn being the pledge or security for the charges upon it; and the defendants would be entitled to all the remedies accorded to that position.

5. PLEDGE—*right of pledgee.* Where property is pledged as collateral security, the pawnee may, after the debt becomes due, sell the property without judicial process, upon giving reasonable notice to the debtor to redeem.

6. The notice of the time and place of sale to the pledgor is indispensable, in the absence of any contract that the pledgee may sell on his own motion.

7. MEASURE OF DAMAGES—*where tort is waived.* Where property is taken tortiously, and sold and converted into money, the owner may waive the tort and bring assumpsit for the money, and the measure of damages will be the amount actually received.

8. Where there is no tort in taking, but a breach of a contract of bailment for which assumpsit lies, the value of the property at the time of the demand is the proper measure of damages.

9. PLEADING—*demurrer.* Objection to pleas that they amount to the general issue, cannot be taken advantage of on general demurrer.

19—46TH ILL.

APPEAL from the Circuit Court of LaSalle county; the Hon. M. E. HOLLISTER, Judge, presiding.

This was an action of assumpsit, brought by Henry Hayes against Cushman & Vorce, in the Circuit Court of LaSalle county, on the following instrument:

"FEBRUARY 9, 1860.

"We hereby agree to store ear corn for Henry Hayes till the first of June next, for three cents per bushel; two cents for shelling; and receiving 75 pounds and deliver 58 pounds. If sold before the first of June, we are not to charge for shelling; if not sold by the first of June, we are to charge $\frac{1}{2}$ per cent. per month till it is sold.    The corn to be good and merchantable.                          CUSHMAN & VORCE."

The declaration contained four special counts upon this contract.

There were no common or money counts.

The defendants filed the general issue and several special pleas.    A demurrer was sustained to the special pleas.    On the trial the jury found a verdict in favor of the plaintiff, and assessed his damages at $862.14; a motion for a new trial being overruled, a judgment was rendered on the verdict. Cushman & Vorce brought the case to this court by appeal.

The facts are stated in the opinion.

Messrs. GLOVER, COOK & CAMPBELL, for the appellants.

Mr. OLIVER C. GRAY and Messrs. BUSHNELL & AVERY, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

On the ninth of February, 1860, Cushman & Vorce, appellants, were warehousemen, doing business in Ottawa, in La-

Salle county, receiving grain on storage at certain rates per bushel.

On that day they entered into the following contract with Henry Hayes, the appellee:

"FEBRUARY 9, 1860.

We hereby agree to store ear corn for Henry Hayes till the first of June next, for three cents per bushel; two cents for shelling; and receiving 75 pounds and deliver 58 pounds. If sold before the first of June, we are not to charge for shelling; if not sold by the first of June, we are to charge ½ per cent. per month till it is sold. The corn to be good and merchantable."

Under this contract, appellants received of appellee at different times, corn, amounting in the aggregate to twelve hundred and sixty and one-third bushels, and they had advanced on it one hundred and sixty dollars in February and March of the same year, and had also paid in December and January preceding, to appellee one hundred and seventy dollars.

On the fifteenth of September, 1864, appellee went to Cushman's office with the contract and receipts for the grain stored, and tendered to him, in legal tender notes, eight hundred and eighty-five dollars, to cover advances, storage, shelling, insurance and interest, on the grain so stored, which Cushman refused to receive. Appellee then made a demand for the corn, and offered to sell it to Cushman, both of which propositions were declined. Corn was selling in the street in Ottawa at that time, at one dollar thirty-two cents per bushel. Cushman said at the time, that it was a matter he knew but little about; that the whole business had been in the hands of Vorce, and asked appellee why he had not settled up before. It is left in doubt what reply, if any, appellee made to this, except that he was not ready to take the corn and settle before; but there is no doubt he wanted to pay the advances appellants had made on the corn, the storage, shelling, interest and insurance, and offered the money for those purposes. Courtney

states that they talked about the warehouse business of Cushman & Vorce having been closed up in 1860, and of Vorce being out of the State.

Appellee brought an action of assumpsit, declaring on this contract in four counts, all substantially alike, and setting out the warehouse receipts showing the amount of corn delivered.

The plea was the general issue, and eight special pleas by Cushman and three special pleas by Vorce; demurrers to all which were sustained.

The jury found, under the instructions, a verdict for the plaintiff, and assessed the damages at eight hundred and sixty-two dollars fourteen cents.

A motion was made by defendants for a new trial, which was overruled and the defendants accepted, and a judgment entered on the verdict, to reverse which they bring the record here by appeal.

The principal questions arise on the pleadings, and the argument has been directed to the points made by them, on a proper understanding of which the controversy turns, and must be decided, as in the several arguments, each party has stated his theory of the case, and his views of the law by which it should be governed.

The eighth and ninth pleas by Cushman and the third plea by Vorce, present appellants' view of the case, and are the ground work of the argument. They are as follows:

*Eighth Plea.*—And for a further plea in this behalf, by leave, etc., this defendant defends, etc., when, etc., and says *actio non,* etc., because he says that before the time of the said supposed tender and demand in said declaration mentioned, and after the said first day of June, 1860, to-wit: on the first day of January, 1864, the said defendants were about to cease doing the business of storing grain and about to terminate all contracts of storage theretofore entered into by them, and in pursuance of said design did then and there give to the said plaintiff notice of said intention and design; and that he must pay

the charges due to said defendants upon said corn and take the same into his own posession within a reasonable time thereafter, and the said plaintiff then and there wholly and entirely refused to pay said charges and to take the said corn into his own possession, but wholly abandoned said corn and refused to take, keep or care for the same; and the said defendant avers that the said contract of storage became and was, then and there, thereby fully determined and terminated. And this defendant further avers that thereafter, to-wit: on the first day of March, 1864, the said plaintiff was indebted to the defendants in a large sum of money, to-wit: the sum of fifteen hundred dollars for storage, insurance, advances and interest, upon said corn; and that the said corn, after the termination of the said contract of storage, still remained in the possession of these defendants, and was then and there worth, in the market, a large sum of money to wit: the sum of fifteen hundred dollars, and was then and there remaining in the possession of these defendants wholly abandoned by the said plaintiff; and that said corn was then and there perishable property, and property that could not be kept by the defendants without continual expense for insurance, elevating and airing, and said corn was then and there constantly being wasted by rattage.

And the said defendants, for the purpose of preserving to the said plaintiff the then value of the said corn, then and there sold the same for the full market value thereof to-wit: for the sum of fifteen hundred dollars, and then and there applied the said sum of money, so received by them upon said sale, to the payment of the said sum of fifteen hundred dollars so due to them as aforesaid.

*Ninth Plea.*—And for a further plea in this behalf, by leave, etc., this defendant defends, etc., when, etc., and says *actio non*, because he says that before the time of the supposed tender and demand in said declaration mentioned, and after the said first day of June, 1860, to-wit: on the first day of January, 1864, the said defendants were about to cease doing the

business of storing grain, and about to terminate all contracts of storage theretofore entered into by them, and in pursuance of said design, did then and there give to the said plaintiff notice of said intention and design; and that he must pay the charges due to said defendants upon said corn, and take the same into his own possession within a reasonable time thereafter, and the said plaintiff then and there wholly and entirely refused to pay said charges and to take said corn into his own possession, but wholly abandoned said corn and refused to take, keep and care for the same.

And the defendant avers that the said contract of storage became and was then, there and thereby fully determined and terminated.

And this defendant further avers, that thereafter, to-wit: on the first day of March, 1864, the said plaintiff was indebted to the said defendant in a large sum of money, to-wit: the sum of fifteen hundred dollars for storage, insurance, advances and interest, upon the said corn; and that the said corn, after the termination of said contract of storage, still remained in the possession of these defendants, and was then and there worth, in the market, a large sum of money, to-wit: the sum of five hundred dollars, and was then and there remaining in the possession of these defendants, wholly abandoned by the said plaintiff, and that said corn was then and there perishable property, and property that could not be kept by defendants without continued expense for insurance, elevating and airing, and said corn was then and there constantly being wasted by rattage.

And the said defendants, for the purpose of preserving to the said plaintiff the then value of said corn, then and there sold the same for the full market value thereof, to-wit: for the sum of five hundred dollars, and then and there applied the said sum of money towards the payment of the said sum of fifteen hundred dollars, so due to them as aforesaid.

And defendant further avers, that there is now due and owing to said defendants the just and full sum of one thousand dollars upon said indebtedness aforesaid.

*Third Plea of Vorce.*—And for a further plea in this behalf defendant Vorce says that, after the termination and expiration of the said contract for storage, and prior to the alleged tender and demand of said corn, and prior to the commencement of said suit, this defendant, for and on account of said defendants, as the firm of Cushman & Vorce, did tender and offer to deliver to the said plaintiff all of the corn to which he was then entitled upon the said corn receipts; and the said plaintiff then and there wholly refused to receive the same or any part thereof. And this defendant further avers, that the said defendants then and there had a lien upon said corn for storage, advances and charges thereon to the amount of a large sum of money, and then and there amounting to, to-wit: the sum of one thousand dollars, which said sum was then and there due and owing by said plaintiff to said defendants. And this defendant also then and there demanded of the said plaintiff the payment of said sum so due to said defendants, and said plaintiff then and there wholly refused to pay the same or any part thereof.

And this defendant then and there applied the said corn to the use of the said firm of Cushman & Vorce to liquidate and cancel, and pay so much of said sum of one thousand dollars as the then market value of said corn would pay, liquidate and cancel, which then market value this defendant avers to have been the sum of, to-wit: five hundred dollars.

And this defendant avers the said balance to-wit: the sum of five hundred dollars, then was and still is due and owing from said plaintiff to said defendants, all of which he is ready to verify, wherefore he prays judgment.

The theory of appellants is, that the contract of February, 1860, only extended to the first of June then next, and that it was competent for them after that day, to put an end to it.

Appellee's theory is, that the contract ran for an indefinite time, so long as he was willing to pay the storage, and he alone could sell the corn, and had the sole right to determine when he would sell it; that the receipts given for the corn recite that they had received it in store at the owner's risk, for account of himself.

We cannot accept either theory. Not that of appellants, for the reason, by the very terms of the contract, appellee had a right to claim storage after the first day of June if he did not sell before that time, on his becoming liable to a charge of one-half per cent. per month until the corn was sold. This, clearly, looks to a time beyond the first day of June that the corn was to be kept in store, and was for the mutual benefit of the contracting parties.

That the contract was to continue for an indefinite time, depending wholly on the will of appellee, cannot be maintained.

Was it so, then no matter what might happen to the bailees, —no matter if it became necessary or expedient to close up their business, and settle all their liabilities growing out of it, they would be unable so to do. This is not a reasonable construction of the contract, for from the very nature of the business, it could not have been the intention of the parties that it should have such direction and effect. Although the contract provides the corn may remain on store by paying one-half per cent. per month until the corn is sold, there is nothing in these terms to prevent a termination of the contract on notice, the exigency to which we have alluded, having arisen, and which is averred in the plea.

It is inconceivable that warehousemen, or any other business men, would make a contract which should hamper them through life, for the inconsiderable compensation stipulated by this contract. Although the contract provides that no charges for shelling were to be made if the corn is sold before the first of June, and if sold after that time appellants were entitled to charge one-

half per cent. per month until it was sold, still it does not follow that appellee alone could continue the contract, so long as he was willing to pay this per cent., in spite of all circumstances which might involve the appellants, rendering it indispensable they should bring their business to a close. Suppose they had died after June first, and their administrators had proceeded to close up the business, would not a notice from them to appellee to come and settle and take away his corn require him to move in the matter; and on failure to comply with the notice, what then would be the position of the parties? Would it not be analogous to that of a pledgor and pledgee, the corn being the pledge or security for the charges upon it? We cannot liken it to anything else.

If so, then appellants were entitled to all the remedies accorded to that position. In 2 Kent's Com., 582, the distinguished author treating of the doctrine of pledging, discourses thus: "The law now is, that after the debt is due, the pawnee may not only proceed personally against the pawnor for his debt without selling his pawn, for it is only a collateral security, but he has the election of two remedies upon the pledge itself. He may file a bill in chancery and have a judicial sale under a regular decree of foreclosure; and this has frequently been done in the case of stock, bonds, plate and other chattels pledged for the payment of the debt. But the pawnee is not bound to wait for a sale under a decree of foreclosure as he is in the case of a mortgage of land; and he may sell without judicial process upon giving reasonable notice to the debtor to redeem."

The notice to the pledgor is indispensable, as to the time and place of sale, in the absence of any contract that pledgee may sell of his own motion. *Stearns* v. *Marsh*, 4 *Denio*, 227, cited by appellants, *Davis* v. *Funk*, 39 Penn. 243. At common law, if a pledge was not redeemed by the stipulated time, it did not then become the absolute property of the pawnee, but he was obliged to have recourse to process of law to sell the

pledge, and until that was done the pawnor was entitled to redeem. If the pledge was for an indefinite time, the creditors might, at any time, call upon the debtor to redeem by the same process of demand. When no time was limited for redemption, the pawnor had his own life time to redeem, unless the creditor in the mean time called upon him to redeem. 2 Kent's. Com. ib.

When the pawn is not under the control of a special agreement, there is no distinction as to the right to sell, between the case of a pledge and of a mortgage of chattels. But the creditor will be held at his peril to deal fairly and justly with the pledge, both as to the time of the notice, and the manner of the sale. Ib. 583.

If this be not the true position of these parties, after notice, and this the remedy of the bailee, we are at a loss to perceive where his remedy is. The Act of 1845, title, "Warehouses," does not seem to have any application to this case as presented by these pleas. That provides where property is of a perishable nature, a portion of it only may be sold after notice, sufficient to pay the charges upon it. No provision is contained in the act for a re-delivery of the property to the bailor, the bailee being about to close his business. Though this property is alleged in both pleas of Cushman to be perishable, a proceeding under this act would not have advanced the object of the bailee, which was, a final closing up of this business, of which the bailor was duly notified, for this, the demurrer admits, unless it should so happen that the corn was of equal or less value than the charges upon it. If it did, in fact, greatly exceed them, this statute would not furnish the means or mode of accomplishing the desired object.

But the pleas are substantially defective, because they do not allege they gave the bailor notice of the time and place of sale, and that they sold the corn at public auction.

The third plea of Vorce is substantially defective for the same reasons, and for the further reason, that they had no

right to apply the corn to the use of the firm, to liquidate and cancel, and pay so much of their debt, as the then market value of the corn would pay and cancel. The only way to ascertain the market value in such a case, was by sale at public auction.

Appellee objects, that these special pleas are demurrable because they amount to the general issue. Admit they do, that objection can only be taken advantage of by a special demurrer, and this is a general demurrer, several to each plea. *Cook* v. *Scott*, 1 Gilm. 333; *Abrams* v. *Pomeroy*, 13 Ill. 133.

If a warehouseman cannot proceed in the mode here indicated, then, on closing up his business, he has no remedy, the statute not meeting the case. It is said by appellee, he could protect himself by proper stipulations in the contract of storage. This is true, but where the necessity of a particular stipulation, when by a fair construction of the contract it is substantially there found. It is not pretended the transaction, on the 9th of January, 1860, was a pawning; we only mean to be understood, that after notice that appellants were about to close up their business, and this in January 1864, near four years after the contract, appellants had the undoubted right to treat the corn as, thereafter, in pledge for their charges and advances, and they could sell it after due notice, at public auction, to satisfy these charges and advances. No custom is referred to as explanatory of such contracts, as showing the intention of the parties, and in its absence, we must give it such a construction as the words of the contract justify, taken in connection with the circumstances attending such cases. It would be, we repeat, quite unreasonable, that the bailor should have the power to make such a contract perpetual.

An objection is made by appellants, that appellee was entitled to recover no more than the amount which the corn was worth when they sold it. This is the doctrine when chattels are taken tortiously, and sold and converted into money; the

owner may waive the tort and bring assumpsit for the money, in which event he can recover only the amount actually received. *Morrison* v. *Rogers*, 2 Scam. 318; *McDonald* v. *Brown*, 16 Ill. 32.

Here the taking was not tortious, but was a contract of bailment, for a breach of which, assumpsit lies, and the value of the property converted, at the time of the ·demand is the proper measure of damages. *O'Reer* v. *Strong*, 13 Ill. 690.

The case of *Pribble* v. *Kent et al.* 10 Ind. 325, is in point on this question, and so is *Stevens* v. *Lowe*, 2 Hill (N. Y.) 132 as to the amount of the recovery. No argument is made on the instructions. Perceiving no such errors as have been assigned, the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*