ABRAM MURDOCK *v.* COLUMBUS INSURANCE AND BANKING COMPANY.

1. CONTRACT. *Pledge. Assignment.*

A written assignment of stocks and bonds to a trustee, who is empowered to sell at discretion and required to dispose of enough to discharge a note due a third person if the interest thereon is not paid at a specified date, does not constitute a pledge, and the assignor is not entitled to demand of the interest or notice before sale.

2. SAME. *Conflict of laws.*

Such an instrument drawn in Alabama, and to be executed there, is to be construed with reference to the law of that State in an action of trover against the third person, residing in this State, for loss occasioned by selling the stocks and bonds at his instance, in a depressed condition of the market.

APPEAL from the Circuit Court of Lowndes County.

Hon. JAMES M. ARNOLD, Judge.

The appellant was indebted to the appellee in the sum of ten thousand dollars, upon a promissory note, made on May 22, 1876, and due three years after date, and was also liable to A. A. Winston on account of his indorsement of notes to the aggregate sum of eight thousand eight hundred and fifty dollars; and in order to secure the payment of these direct and contingent obligations, when about starting to the State of Coahuilla, to take charge of the San Rafael silver mines, he executed the following instrument: —

" I hereby transfer and assign to A. A. Winston the following stocks and bonds, to wit: 1,000 shares Mobile and Ohio Railroad stock; 502 shares San Rafael Silver Mining Co., preferred stock ; 250 shares San Rafael Silver Mining Co., common stock; 25 shares Stonewall Manuf. Co., stock; ten shares People's Savings Bank stock; eight bonds New Orleans and Chicago Railroad, $1,000 each; Sterling Bond Mobile and Ohio Railroad, $1,000; Interest Bonds Mobile and Ohio Railroad, $2,200; Second Mortgage Bonds Mobile and Ohio Railroad, $1,500. Which said bonds and stocks the said A. A. Winston is to sell and dispose of at his discretion, and from the proceeds to pay : first, my note of May 22, 1876, to the Columbus Insurance and Banking Company, for ten thousand dollars, due three years after date, with interest at ten per cent per annum ; second, to pay and secure himself for his indorsement for me on my three notes, amounting in the aggregate to eight thousand eight hundred and fifty dollars; and I hereby make and constitute said A. A. Winston my lawful attorney, irrevocable, with full power to sell and convey my title to any or all of said bonds and stocks. And said Winston is to sell and dispose of said stocks and bonds at his discretion, at such time and manner and for such price as he shall deem best. But in case the interest due on the said note to the said Columbus Insurance and Banking Company, that shall have accrued on said note on May 22, 1878, is not paid, the said Winston shall sell said stocks and bonds, or a sufficiency of them, to pay and satisfy said note in full. But in case said interest is paid, then the said Winston shall not be required to sell said stocks and bonds until said note is due. But, as before said, the said Winston shall have the full discretion to sell or dispose of any or all of said stocks and bonds at any time in his discretion. It is understood that a portion of said stocks and bonds are now in the custody of the said Insurance and Banking Company, and they are to be turned over to the said Winston, and the portion of said stocks and bonds now held by the said Winston are to be deposited by him with the said Columbus Insurance and Banking Company, so as to consolidate all the said stocks and bonds in one place, and there to be held for account of and subject to the order of said Winston, and to be disposed of at his discretion. And in case the said

Winston should die, or become incapable of acting before this trust is closed, the said Insurance and Banking Company and the representatives of the said Winston and the said Murdock shall jointly select some one who shall be invested with all the powers herein conferred upon the said Winston. As given under my hand and seal this 2d day of May, 1877.

A. MURDOCK. [SEAL.] "

" Test : JOHN BOWEN,
        JOHN T. HUDSON.

" I accept the within trust, Mobile, May 2, 1877.

A. A. WINSTON."

" Test : JOHN BOWEN,
        JOHN T. HUDSON."

This paper was written by Murdock, who is not a lawyer, and was signed in Mobile, Alabama, which was Winston's place of residence, and where the appellant was preparing to sail for Mexico. After his departure, the appellee became importunate in its demands upon Winston to sell, and, finally, went so far as to threaten personal responsibility if he longer refused to comply with its demands. Under the pressure of these threats Winston, after making repeated and earnest protests, and after assuring the appellee that sales, in the then condition of the market, would result in a ruinous and unnecessary sacrifice of Murdock's interest, began on April 15, 1879, to sell the securities, and continued to May 27, when all of them were sold, except a few which were returned by Winston to the appellee. The proceeds paid nearly the whole of the appellee's debt, but the sacrifice resulted in a loss to Murdock of nearly twenty-five thousand dollars. The sales were private. No demand for payment of the debts or interest was made upon the appellant before the sales, or any notice given to him of such sales. As soon as notified of what had taken place, he repudiated the transaction. Upon this state of facts Murdock claimed that the whole proceeding, which took place during his absence, was illegal, and brought this action of trover, which resulted in a verdict for the defendant.

*Hannis Taylor*, for the appellant, argued orally and filed a brief.

The transaction out of which this action sprung was a pledge : first, because possession passed at once from the pledgor to the pledgees ; second, because the terms of the paper show that a mortgage was not intended. *McLemore* v.

*Hawkins*, 46 Miss. 715; *Brewster* v. *Hartley*, 37 Cal. 15.  A mortgage of goods is at common law distinguishable from a mere pawn.  By a mortgage, the whole legal title passes conditionally to the mortgagee ; and, if the goods are not redeemed at the time stipulated, the title becomes absolute at law, although equity will interfere to compel a redemption. Story on Bailments, §§ 287, 297 ; Tyler on Usury, 481, 497, 514.  A mere inspection of this paper will disclose an entire absence of all terms that could convert it into a mortgage. There is no condition of defeasance, no time mentioned after which, if the goods are not redeemed, the title becomes absolute at law.   After default of payment in the case of a pledge, the property deposited does not belong to the pledgee : he cannot appropriate it to himself, and his only power is that of sale, through which he must realize his debt.   Story on Bailments, § 318.   Under this instrument could the property in question ever have become the property of the pledgees ? Its terms contradict such an idea ; the power of sale alone was provided in case of default.   Winston, one of the pledgees, accepted the power of sale as a trust.   Every pledgee has this status by operation of law.   The pawnee of goods exercises a trust in the act of selling them, and is responsible as trustee for the manner in which he conducts the proceedings.   Edwards on Bailments, § 255.   Under the law of Alabama, which governs this instrument, it is a pledge.   *Brown* v. *Freeland*, 34 Miss. 181 ; 2 Parsons on Contracts, 95 ; *Nabring* v. *Bank of Mobile*, 58 Ala. 204.   Property, like that here involved, cannot be legally pledged except by such a written transfer as was made by the plaintiff; and this transfer, although absolute in its terms, merely vested in the pledgees the possession and special property necessary to support the pledge.   Edwards on Bailments, § 252; *Wilson* v. *Little*, 2 N. Y. 443 ; *Stearns* v. *Marsh*, 4 Denio, 227.   The court must determine the effect of writings, and not by instructions refer them to the jury.  *Benson* v. *Benson*, 24 Miss. 625 ; *Randolph* v. *Govan*, 14 S. & M. 9 ; *Fairly* v. *Fairly*, 38 Miss. 280.   Under this rule it will be necessary for the court to construe the written instrument now under discussion.

*Murphy, Sykes & Bristow*, on the same side.

*Orr & Sims*, for the appellee.

The written instrument was more than a pledge, which is a contract by which a debtor delivers to his creditor, as a security for his claim, personal property to be held by him, which the creditor obligates himself to return to the debtor after his claim shall have been satisfied. Addison on Contracts (5th ed.), 298 ; 1 Bouv. Inst. 419 ; *Parshall* v. *Eggart*, 52 Barb. 367, 374 ; Story on Bailments, §§ 287, 303 ; Tyler on Usury, 494, 506, 507. Winston, as trustee, had control of the property, which was not in the possession of the defendant. *Casey* v. *Cavaroc*, 96 U. S. 467. Conveying the legal title to a trustee, and providing a law day or condition, give to the instrument the elements of a mortgage or deed in trust, as distinguished from a pledge. *Sims* v. *Canfield*, 2 Ala. 555 ; *Ross* v. *Ross*, 21 Ala. 322 ; *Knox* v. *Easton*, 38 Ala. 345 ; *Tannahill* v. *Tuttle*, 3 Mich. 104 ; *McLemore* v. *Hawkins*, 46 Miss. 715 ; *Myers* v. *Estell*, 48 Miss. 372 ; *Elson* v. *Barrier*, 56 Miss. 394 ; *Barfield* v. *Cole*, 4 Sneed, 465 ; *Hill* v. *Manser*, 11 Gratt. 522 ; Burrill on Assignments, 33 ; Jones on Chattel Mortgages, §§ 4, 5 ; Tyler on Usury, 537 ; 2 Wait's Actions and Defences, 165 ; 4 Wait's Actions and Defences, 513. If a trustee had been substituted for Winston under the power, would he have been co-pledgee ? If a pledge, the contract is not a naked pledge, but one where the pledgor waived his common-law rights as to notice of sale. *Johnson* v. *Turner*, 7 Ohio, 568 ; *Stevens* v. *Bell*, 6 Mass. 339 ; *Milliken* v. *Dehon*, 27 N. Y. 364 ; Story on Bailments, §§ 10, 317 ; Edwards on Bailments, § 260.

*W. H. Sims*, on the same side, made an oral argument.

CAMPBELL, J., delivered the opinion of the court.

The transaction which gave rise to this controversy was had in Alabama, and we recognize the applicability of the law of Alabama, but are satisfied that there is nothing peculiar in it, and that the law applicable to the case is the same in that State as in our own and elsewhere. The written instrument executed by the appellant fixed the rights of parties. By it the title of the choses in action described was vested in Winston, who was constituted the agent of the appellant, and

was invested with power to sell and dispose of the things assigned, at his discretion, as to time and manner of selling, and the price for which to sell ; and, if the interest on the note to the appellee, accrued on May 22, 1878, was not paid, Winston was *required* to sell enough to pay the principal and interest of the note. He had full discretion to sell all of the securities, at any time, as he pleased, but it was made obligatory on him to sell to pay the note, if the interest due on May 22, 1878, was not paid. The interest mentioned was not paid, and Winston sold the securities to pay the note, as he had the right to do, and was required to do, in that contingency, and the appellant had no legal cause of complaint ; because he armed Winston with the power, and charged him with the duty, to do what he did.

The appellant was not entitled to notice of the sale, or to demand of payment of the interest on the note, before a sale, because he conferred the power of sale on Winston, his agent and trustee, with full discretion as to time, manner, and price, and prescribed the contingency in which he should sell, and did not stipulate for notice of sale or demand of payment as conditions of the exercise of the power of sale. The written instrument is to receive a reasonable interpretation, with the view to ascertain the intent of the maker ; and it is manifest that his purpose was to place the title and control of the securities transferred in Winston, and to arm him with the fullest power of disposition of them, as expressed in the assignment, and that he never contemplated that any notice should be given to him or demand made of him. His interests were committed to Winston, who was made his agent with respect to the matters embraced in the transaction. It was not a mere pledge, but a transfer, in trust, to a third person, other than the creditor, with a power to sell and pay certain debts. The securities were not delivered to the appellee nor to its agent. The title was vested in Winston, as a trustee and agent of the appellant, and the appellee was a mere custodian of the securities for Winston, in whom the right of control was placed by the written instrument. The appellee had no power over the securities, and no right to deal with them. It was by the terms of the assignment made responsible to Winston for

the things assigned, and to be committed to its custody. In no contingency could it dispose of them, with or without notice, or after repeated demands for its money. Winston only could do that.

In *Nabring* v. *Bank of Mobile*, 58 Ala. 204, the shares of railroad stock were transferred by the debtor *to the creditor*, on the books of the company, to secure the money borrowed. There was no written instrument conferring a power to sell the shares on a prescribed contingency, or at discretion ; and the court held the transaction to be a pledge, and that the bank, as pledgee, " had no right to sell the shares without first demanding payment of the debt from Nabring, or giving him notice of the intention to sell." That case differs widely from this. It was strictly a pledge, subject to the rules of law applicable to pledges, because the shares were vested in the creditor as a security for the debt, with the legal right to have them upon payment of the debt, and there was not a transfer of them to a third person, constituted trustee and agent of the transferor, with power to sell and apply the proceeds in discretion, or in a given contingency. In *Wilson* v. *Little*, 2 N. Y. 443, cited in the opinion in the Alabama case mentioned above, there was a transfer of shares of railroad stock *to the lender of the money*, as security for the loan. It was insisted by one party that the transaction was a mortgage, and not a pledge, because the legal title to the stock was vested in the lender ; but the court held that that fact did not destroy the character of the transaction as a pledge, and that the transfer of the title to the stock *to the creditor* was " equivalent to actual possession, because it is a delivery of the means of obtaining possession." The argument was that in a pledge the title remains in the pledgor, and the pledgee has only a special property in the pledge, and, as the complete title was by the transfer of the stock vested in the creditor, that was inconsistent with the nature of a pledge, and made a mortgage. The court rejected that view as unsound, and declared that the transfer of title to the creditor is not inconsistent with a pledge, if by the terms of the contract the debtor has a legal right to the restoration of the pledge on payment of the debt at any time. The court held the transfer of stock to be a pledge, with all its incidents, except as varied

by the contract between the parties. In that case there was
no time fixed for a payment of the money borrowed, and no
contingency prescribed in which the power to sell was to be
exercised. The stock was stated in a recital in the written
contract to have been deposited as collateral security, with
authority to sell the same on the non-performance of the prom-
ise to pay the money, without notice. It was held that the
pledgor had, by his contract, waived the right to notice of the
sale of the stock, but was entitled to a demand of payment of
the money, to secure which it was deposited, before the pledgee
could lawfully sell. The court said : " It is well settled that,
where no time is expressly fixed by contract between the par-
ties for the payment of a debt secured by a pledge, the pawnee
cannot sell the pledge without a previous demand of payment,
although the debt is technically due immediately. Story on
Bailments, § 308; *Stearns* v. *Marsh*, 4 Denio, 227."

In *Brewster* v. *Hartley*, 37 Cal. 15, the question for decision
was, whether McLane, who held certain shares of the stock
which were transferred to him as trustee for Wells, Fargo, &
Co., by the railroad company, to secure money loaned by them
to the company, could lawfully vote such stock in the election
of directors of the railroad company. In order to decide this
question, the court examined into the nature of the transaction
by which the stock was transferred to McLane, to determine
whether it was a pledge or a mortgage, and concluded that it
was a pledge, whereby the general property in the stock re-
mained in the railroad company as its owner, and, therefore,
that it could not under the charter of the company be voted by
McLane, who did not hold it as owner. The transaction was
this : By resolution of the directors ten thousand shares of the
stock of the railroad company were issued to McLane, as
trustee for Wells, Fargo, & Co., as security for money ad-
vanced by them to said company, and McLane gave his writ-
ten obligation to return the stock to the company on payment
of the indebtedness to Wells, Fargo, & Co. No power was
vested in McLane to sell the stock. No time was fixed for
payment of the money due to Wells, Fargo, & Co. McLane,
although called " trustee " in the transaction, was a mere
agent of the creditors, and delivery of the stock to him was

the same as a delivery to the creditors, as held by the court. So that it was treated by the court as a mere pledge of stock by the company to Wells, Fargo, & Co., as security for money loaned, with the legal incidents of a pledge. The case at bar is widely different from that. In it there was no transfer of securities to the creditor, but to a trustee, who was made the agent of the owner, and armed with full power of disposition, to the end that a sale might be made and the proceeds applied as directed by the instrument evidencing the transfer. There was no putting of the creditor in possession of the securities, except as a mere custodian of them for Winston, the agent of appellant. The appellee had neither title, possession, except mere custody as a depositary for Winston, nor any control whatever of the securities transferred. In *McLemore* v. *Hawkins*, 46 Miss. 715, it was not controverted that the transaction was a pledge. The parties so denominated it in making it, and it was so treated by counsel and court. There was no dispute as to its character. The controversy was as to the rights of parties with respect to the pledge, and not whether or not there was a pledge.

We have examined all of the authorities relied on for the appellant, and have not found any to sustain his claim, that his transaction with Winston was a pledge. The particular examination of the cases cited by counsel for the appellant, made above, points out the manifest distinction between them and this case. There is a strong resemblance between it and *Milliken* v. *Dehon*, 27 N. Y. 364, which presents what the court, in its opinion, denominated " a peculiar contract between the parties," " to be construed according to its own language and circumstances," and therefore not to be governed by the " rules at best only applicable to relations of strict and simple pledgor and pledgee; " language which, we think, is appropriate to the case at bar, and decisive of it. In a case of " strict and simple " pledge the law applicable to pledges must govern the rights of the parties to it, but to apply these rules to the transfer made by the appellant to Winston would be to disregard the plain terms of the written contract, and fritter away the rights of the parties in a too close adhesion to rules established by the courts to govern the transaction known as a

mere pledge or pawn, in which the subject of the pledge is delivered to the pledgee as a security, and to be re-delivered when it has served its purpose. Our task in the examination of this case was made easy and pleasant by the very learned and exhaustive arguments of counsel on both sides, which made plain our way to the conclusion reached.

*Judgment affirmed.*