Malcolm McDowell

*v.*

The Chicago Steel Works *et al.*

*Filed at Ottawa May 9, 1888.*

1. PLEDGE—*right of pledgee to make sale—whether notice required.* At common law the pledgee has no right to sell the property pledged, with-·out judicial process, unless he gives the pledgor reasonable notice to redeem; and the pledgor is also entitled to notice of the pledgee's intention to sell, and of the time and place of sale.

2. But such notice is not necessary when payment is demanded of the pledgor, and the instrument of writing by which the security pledged is assigned to the pledgee specially authorizes the latter to sell, "at public or private sale, at his discretion," upon default being made, or upon the expiration of a certain number of days after default.

3. At common law, when property is pledged to secure a debt, the right to sell for default in payment is conferred by the law, and hence the sale must be made subject to the conditions imposed by the law,—that is to say, after making demand and giving notice.

4. But when the pledge is accompanied by a special contract as to sale upon non-payment of the debt, the right to sell is conferred, not by the law, but by the contract itself, and hence must be exercised in the mode· specified by the parties in their agreement. As such contract embodies the intentions of the parties, its silence as to notice will justify the inference that the power to sell without notice was intended to be conferred.

5. The owner of certain shares of stock pledged the same as security for the payment of his promissory note when payment should be demanded, and authorized, in writing, the holder to sell the same, either at public or private sale, in his discretion, if default should be made in payment for thirty days. Payment was demanded, and on default the holder sold the stock at public sale, advertised in a daily public newspaper: *Held,* that the sale was valid, and that the pledgor was not entitled to a personal notice of the time and place of sale.

6. LACHES—*estoppel—delay in seeking to set aside sale of a pledge—·realizing the value of the thing pledged.* Six years after a sale of a stock-holder's shares of stock, which he had pledged to secure the payment of his stock note, he filed his bill in chancery to have the sale set aside. It appeared that after the sale he accepted from the corporation a sum of money, which represented the company's estimate of the difference between the real value of his stock and what it sold for, and afterward demanded his stock note as having been paid by the sale of his stock, and on refusal

to surrender the same to him he brought suit in trover for it: *Held*, that the unexplained delay in filing his bill, and his conduct in the nature of an. estoppel, were such as to present a bar to relief.

7. STOCKHOLDER—*liability upon stock note—agreement among stock- holders not to pay, except by dividends.* Although it may have been agreed. between the stockholders of a private corporation that payment of the stock should not be enforced, but should be paid by the dividends, if valid, and. not contrary to public policy, the contract can not be set up to defeat the· collection of a note given by a stockholder thereafter, for the amount of his stock, which contains an unqualified promise to pay. The giving of such, a note will amount to a rescission of any such agreement.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

Mr. THOMAS DENT, and Mr. J. H. RAYMOND, for the appellant:

The sale of appellant's stock was made in violation of the original agreement as to the manner in which the stock was to be paid in.

The sale was made without actual notice to the appellant. Such notice was due, because the affairs of the company were such as to render the sale unnecessary, and because of the prior understanding embodied in the by-laws, and for the further reason the company had conceded, by its stipulation, that it would not proceed on the former resolution of the board.

The pretended sale was in the nature of a declaration of a, forfeiture of appellant's stock. No stock certificate had ever been issued to him, and the sale, without actual notice to him, was made for the fraudulent purpose of having the stock issued to another person. As to forfeiture of stock, see Rev. Stat. chap. 32, entitled "Corporations," sec. 7.

Two notices are usually required in case of a pledge in general,—one giving a reasonable time to redeem, and the other stating the time and place of the sale. 2 Kent's Com. 582; *Cushman* v. *Hayes*, 46 Ill. 145; *Trust Co.* v. *Rigdon*, 93 id. 458; *Rozet* v. *McClelland*, 48 id. 347; *Davis* v. *Funk*, 39 Pa. St. 243; *Washburn* v. *Pond*, 2 Allen, 474.

The facts tend to show that C. P. Buckingham, the seller of the stock, was the buyer of the same, though in the name of his nephew, Clarence, and for this reason the sale was invalid. *Stokes* v. *Frazier*, 72 Ill. 428 ; *Killian* v. *Hoffman*, 6 Bradw. 206.

As to the necessity of actual notice of the time and place of the sale of property pledged, see *Jerome* v. *Carter*, 94 U. S. 734; *Hancock* v. *Insurance Co.* 114 Mass. 155; *Duffield* v. *Miller*, 92 Pa. St. 286; *Fletcher* v. *Dickinson*, 7 Allen, 23; *Stearns* v. *Marsh*, 4 Denio, 227.

The pledgor has the right to be present at the sale, to see that it is properly conducted, and to guard his interests. *Alexandric County* v. *Burke*, 22 Gratt. 254; 12 N. J. Eq. 323; Jones on Pledges, secs. 602-607.

Messrs. Stiles & Lewis, for the appellees:

The oral agreement set forth in the bill is not established by the evidence.

A parol agreement prior to or contemporaneous with a written subscription to stock, is invalid, if inconsistent with the writing. *Smith* v. *Railroad Co.* 30 Ala. 650; *Johnson* v. *Railroad Co.* 9 Fla. 299; *Railroad Co.* v. *Stevens*, 6 Ind. 379; *Thigpen* v. *Railroad Co.* 32 Miss. 357; *Ferry Co.* v. *Jones*, 39 N. H. 491.

The giving of the stock notes in July, 1876, was a waiver of any prior parol agreement as to the manner of paying the stock subscription. *O'Donald* v. *Railroad Co.* 14 Ind. 250; *Railroad Co.* v. *Moss*, 2 Duv. 242; *Slipher* v. *Earhart*, 83 Ind. 173.

Authority to sell stock at public or private sale amounts to an implied waiver of actual notice of the sale. *Robinson* v. *Harley*, 11 Iowa, 410; *Bryson* v. *Rayner*, 25 Md. 424; *Milliken* v. *Dehon*, 25 N. Y. 364.

Appellant's *laches* is such as to bar him, and, by bringing suit in trover for his stock note, elected to affirm the sale of the stock.

Mr. Justice Magruder delivered the opinion of the Court:

On July 27, 1876, the appellant signed and delivered to the Chicago Steel Works the following stock note:

"Whereas, the undersigned did, in the month of September, 1873, subscribe for fifty shares, of $100 each, of the capital stock of the Chicago Steel Works, (an incorporated body organized under the laws of the State of Illinois,) upon which subscription no payment has yet been made:

"Now, therefore, I, Malcolm McDowell, do hereby agree and promise, in consideration of the premises, to pay to the said Chicago Steel Works, whenever payment may be demanded by the directors thereof, the sum of $5000, (being the par value of said stock,) with interest on the same at the rate of ten (10) per cent per annum from the 1st day of January, A. D. 1874, payable annually, until this obligation is paid; and to further secure said payment, I do hereby assign and transfer to the treasurer of said Chicago Steel Works, and his successor or successors in office, all my right, title and interest of and in and to said stock so subscribed for, with any its improvements and increase, as collateral security for the payment of said indebtedness, when demanded, as above provided; and in case of default in payment when so demanded, I do hereby authorize and empower the said treasurer to sell my right, title and interest in said stock so subscribed for, with any its improvements and increase, or so much as may be necessary to pay this obligation, at public or private sale, at his discretion, after the expiration of thirty days after such default, and in case of any such sale I do hereby empower him, the said treasurer, or his successors in office, of said corporation, or any other officer of said corporation, to make, execute and deliver to the purchaser or purchasers at any such sale, any and all instruments in writing, or assurances or certificates of stock, which may be necessary or proper to vest in or evidence to such purchaser or purchasers the full ownership and title to the right and interest so to be sold to him or them.

"In testimony whereof, I have hereunto set my hand this 27th day of July, A. D. 1876."

On December 13, 1879, the board of directors passed a resolution calling for payment of the stock notes on January 15, 1880. Notice of this resolution was at once served upon appellant and demand was made of him to pay his note on January 15, 1880. On December 17, 1879, appellant filed his bill in the Superior Court of Cook county enjoining the sale under the provisions of the note. January 17, 1880, the Chicago Steel Works stipulated in writing that it would not attempt to make any sale under the resolution of December 13, 1879, or the notice given in pursuance thereof, but expressly reserved the right to sell the stock interest of appellant under such methods or proceedings as might be thereafter adopted. The bill so filed was demurred to on January 30, 1880, and, on March 24, 1880, the demurrer was sustained and the bill dismissed.

On April 6, 1880, the directors passed another resolution that the stock notes be declared due on April 15, 1880, and that the secretary of the company be directed to give the necessary notice and make the necessary demand for the payment of the same into the hands of the treasurer on or before April 15, 1880. On April 7, 1880, a written notice was served upon the appellant, which contained an exact copy of the resolution of the day before and demanded of the appellant that he pay his stock note and the accumulated interest thereon on or before April 15, 1880. The notice also called attention to the fact that a meeting of the stockholders would be held on April 13, 1880, to elect directors.

Appellant failed to pay his note and on May 17, 1880, the board of directors passed a resolution, in which, after reciting the former resolution of April 6, 1880, and that notice had been given to appellant and demand made of him, as therein directed, and that his default had continued for more than thirty days, it was resolved that the treasurer be authorized

and requested to sell all the right, title and interest of appellant in the stock so subscribed for by him at public sale to the highest bidder at such time and place as the treasurer might select, and to deliver to the purchaser a stock certificate, etc.

On May 22, 1880, at ten o'clock in the forenoon the fifty shares of stock subscribed for by appellant and all his interest in and under his subscription were sold at public auction at the north door of the Chamber of Commerce on Washington street in the city of Chicago to Clarence Buckingham for $5000, which amount was applied on the note. Previous notice of the sale had been given by the publication thereof for three days in a Chicago daily newspaper.

The original bill in the case at bar was filed in the Superior Court of Cook county on November 19, 1884; it does not attack or even mention the sale of May 22, 1880; it sets up the organization of the corporation above named, for the purpose of making plow beams out of the fag ends or refuse of steel rails, with a nominal capital of $20,000, and that appellant, Catherinus P. Buckingham, Ebenezer Buckingham and John Buckingham each subscribed for one-fourth, or $5000, of the stock; it alleges that, in forming the corporation, an agreement was made for the payment of the stock subscriptions out of the profits of the business, that the Buckinghams furnished the capital and charged interest on their loans to the company, etc.; it charges that the Buckinghams and the company entered into a conspiracy to oust appellant from the corporation and, in pursuance thereof, induced him to execute the note above set forth, etc.; it prays for a discovery and accounting, for the issue to appellant of the stock subscribed for by him, or, if issued to others, for its surrender, for an injunction against any transfers, re-issues or increase of the stock and against the making of any erasures or entries in the books of the company, etc.

On December 20, 1884, the company and the Buckinghams, defendants, answered the bill denying its allegations and set-

ting up the sale of May 22, 1880, and the proceedings leading up to it, as hereinbefore detailed. On April 2, 1886, appellant filed an amendment to his bill and therein for the first time referred to the sale of May 22, 1880, and charged that it was made without notice to him and was a fraud upon his rights and an attempt to forfeit his stock, etc.

After proofs taken and upon hearing of the cause, the Superior Court dismissed the bill for want of equity, which decree has been affirmed by the Appellate Court, whence the case comes before us by appeal.

The sale of May 22, 1880, is attacked by the appellant as void for the alleged reason that it could not be lawfully made without notice to him and that such notice was not given. At common law the pledgee had no right to sell the property pledged without judicial process, unless he gave the pledgor reasonable notice to redeem; and the pledgor was also entitled to notice of the pledgee's intention to sell and of the time and place of sale. Such notice, however, is not necessary where, as in the present case, payment is demanded of the pledgor and the instrument of writing, by which the security pledged is assigned and transferred to the pledgee, specially authorizes the latter to sell "at public or private sale at his discretion," upon default being made or upon the expiration of a certain number of days after default. *Cushman* v. *Hayes,* 46 Ill. 145; *Loomis* v. *Stave,* 72 id. 623; *Union Trust Co.* v. *Rigdon,* 93 id. 458; Jones on Pledges, sec. 611; Story on Bailments, sec. 317; *Milliken* v. *Dehon,* 27 N. Y. 364; *Robinson* v. *Hurley,* 11 Iowa, 410; *Bryson* v. *Raynor,* 25 Md. 424; *Genet* v. *Howland,* 45 Barb. 560; *Murdock* v. *Columbus Ins. Co.* 59 Miss. 152; *Mowry* v. *Wood,* 12 Wis. 413.

At common law, where property is pledged to secure a debt, the right to sell for default in payment is conferred by the law, and hence the sale must be made subject to the conditions imposed by the law, that is to say, after making demand and giving notice. But where the pledge is accompanied by a

special contract as to sale upon non-payment of the debt, the right to sell is conferred, not by the law, but by the contract itself, and hence must be exercised in the mode specified by the parties in their agreement. As such contract embodies the intentions of the parties, its silence as to notice justifies the inference that the power to sell without notice was intended to be conferred.

We are aware that in *Rozet* v. *McClellan*, 48 Ill. 345, language was used which seems to imply that the pledgor must have notice even where the pledgee is authorized to sell the collateral security at public or private sale. But such language was unnecessary to the decision of that case and was mere *obiter dictum*. There no sale had been made of the stock pledged as collateral security, and the question of the power to sell without notice did not arise. In that case suit was brought upon the note, and the question was whether the holder of the note was bound to sell the stock, transferred to him as collateral security, upon default in payment of the note, and, on failing to do so, whether he was liable to account for the loss.

Here appellant promised to pay $5000 to the company when payment should be demanded by the directors. They demanded payment of him in December, 1879, but he refused to comply with the demand and postponed the threatened sale under the power in the note by a chancery suit which lasted until the end of March, 1880. In that suit he was notified by the company that it reserved its right to make sale of his stock interest under a future notice and was thereby forewarned and notified of the intention of the company to sell in pursuance of the authority conferred by the note. He made the note and was bound to know, that, if his default continued for thirty days after demand, the treasurer was authorized to sell. When, therefore, a second demand was made on him for the payment of his subscription in April, 1880, it was his duty to take notice that in thirty days after April 15, 1880,

his interest would be sold at public or private sale, if he did not pay. By an instrument in writing he transferred and assigned his interest to the treasurer of the company and authorized him, in case of default for thirty days, "to sell at public or private sale at his discretion." If, in the exercise of such discretion, the treasurer had made a private sale, notice to appellant of the time and place of such sale would not only have been unnecessary, but would have been an idle form. The power to make a private sale necessarily dispensed with the duty of giving notice, and the obligation of giving notice was equally removed when the discretion of making the sale either public or private was conferred upon the treasurer. The sale, however, was a public one, made at a public place and after due advertisement in a public newspaper.

We do not think it would be a fair construction of the contract to hold that it was intended to require the company to give appellant personal notice in case the sale should be public, but no notice in case it should be private. Where property was pledged to secure a debt without any special contract as to notice, the pledgor was entitled to notice of the time and place of the sale to enable him to procure buyers and enhance the price. But the appellant yielded his rights in this regard, when he bestowed the discretion to make a private sale, because such sale might be made at a price fixed in advance by the company and without competition among bidders.

The appellant has furthermore been guilty of serious *laches* in allowing the sale to stand without attack for so many years and after his interest had been transferred by the purchaser at the sale and gone into the hands of third parties. (*Hayward* v. *National Bank*, 96 U. S. 611.) He took no measures to set aside the sale until April, 1886, six years after it was made. To be sure, he filed the original bill in this case four years and a half after the sale, but, even if that period was not a long delay, such original bill did not question the validity of the sale, but sought relief on other grounds. On the

other hand appellant has done acts, which ought to estop him from now claiming the sale to be void. For instance, he accepted from the company a sum of money which represented their estimate of the difference between the real value of his stock interest and what it sold for. Again, he wrote the company a letter saying: "Please send me my stock note which I understand has been satisfied," etc., and, upon failing to get his cancelled note, commenced a suit in trover for it.

Appellant claims, however, that there was an agreement made between himself and the Buckinghams before the organization of the company, by the terms of which the subscriptions to the capital stock were not to be paid in money but out of the profits of the business; and, as confirming his statement in regard to such an agreement, he points to section 9 of the by-laws, adopted at a meeting of the board of directors on September 29, 1873, which provided that a capital stock account should be kept, and that therein the subscribers should be charged with their stock liability and credited with dividends, etc. His position is that, if he had been properly credited with his share of the profits, his liability on his stock subscription would have been discharged.

We will not stop to discuss whether such an agreement, if it existed, was not against public policy and contrary to the statute, which requires stock to be paid for, nor whether it was abrogated by the language of the stock subscription, which reads as follows: "We severally agree to pay the said company the sum of $100 on each share at such times and in such installments as shall be required by the board of directors of said company." It is sufficient to say, that, even if such an agreement were valid, its existence is not proven by such a preponderance of the evidence as would justify its being made the basis of affirmative relief. The proof of it consists entirely of the testimony of the appellant himself, while both C. P. and Ebenezer Buckingham deny that there was any such agreement. There may have been and probably was some talk to

the effect that the business would be so profitable as to earn enough to pay for the stock. Moreover, the proof does not show, that, in the early part of 1880, the profits were sufficient to pay the stock notes without doing injustice to the creditors by such an application of the surplus. The other subscribers paid their stock notes in money with the exception of a small credit thereon arising from the proceeds of dividends declared in their favor.

On July 1, 1876, a dividend of fifteen per cent or $750, and, on January 1, 1878, another dividend of ten per cent or $500, were declared in appellant's favor. These sums, however, he did not suffer to remain in the hands of the company to be applied on his note, but drew them out and used them for other purposes.

But even if there was such an agreement as is contended for, it was rescinded by the proceedings which took place on July 27, 1876. On that day there was a meeting of the directors at which appellant was present. Section 9 of the by-laws was repealed and appellant assented to the repeal. A resolution was adopted, that each of the subscribers to the capital stock should give such a stock note as that hereinbefore discussed. The resolution was read over to appellant and agreed to by him, and, in pursuance thereof, he executed his note with the provisions above stated. The proof does not show that any fraud or unfair means were used to induce him to sign the note. By its terms he agreed to pay the $5000 and interest whenever demand should be made on him by the directors, and without limiting his obligation to pay to such amounts as might be coming to him from the profits of the business.

We do not deem it necessary to discuss any of the other points made by counsel. We see no reason for disturbing the decree of the court below.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*