DUNBAR v. COMMERCIAL ELECTRICAL SUPPLY CO.

No. 1612.    Opinion Filed April 9, 1912.

(123 Pac. 417.)

1.    **EVIDENCE**—Foreign Statutes—Presumptions.    Where the question arises as to what laws are in force in another state, and the same are neither pleaded nor proved, it will be presumed that such laws are the same as the laws of this state.

2.    **BILLS AND NOTES**—Action on Note—Days of Grace.    Where, at the time a promissory note became due, the law of the forum allowed days of grace, but, before trial or the bringing of an action to recover on such note, the law was repealed, and the new statute made such note due at the time fixed therein, without grace, the former law, and not the law in force at the time of the trial, should govern.

3.    **CORPORATIONS**—Pledge of Stock—Sale of Securities.    It is competent for the parties to a contract of pledge to agree that, upon default in the provisions of such contract, the pledgee may sell, according to the terms thereof, certain certificates of stock so deposited, without reference to the maturity of the indebtedness secured thereby.

4.    **SAME**—Sale of Collaterals—Conversion.    A sale fairly made by a pledgee of certificates of stock, upon a default in terms of the contract of pledge, will not constitute a conversion of the pledge. Neither will delay in making the sale, where the terms of the contract are not broken, create a liability on the part of the pledgee for the value of the stock so hypothecated.

(Syllabus by Sharp, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by the Commercial Electrical Supply Company against S. E. Dunbar.    Judgment for plaintiff, and defendant brings error.    Affirmed.

*George A. Murphey,* for plaintiff in error.

*Masterson Peyton* and *Matthew G. Mason,* for defendant in error.

Opinion by SHARP, C.    December 3, 1908, the plaintiff in error, defendant below, executed to the defendant in error, plain-

tiff below, his promissory note in the sum of $1,260.58, payable
six months after date at St. Louis, Mo. At the same time, there
was delivered to the payee of the note, as collateral security for
the payment thereof, a certain stock certificate for ten shares of
stock in the Dunbar Electrical Supply Company of Oklahoma
City, accompanied by a written contract of pledge, included in
which was the following undertaking and power of sale:

"And agree to give additional security whenever market val-
ue of the above collateral should decline and on notification of
said Commercial Electrical Supply Co., by any of its officers to
me. In default of payment of said note at maturity or the pay-
ment of any such other obligations, or in default of my giving
such additional security when so notified within twenty-four
hours after such notice, I hereby authorize said Commercial Elec-
trical Supply Co. or any of its officers, or agents, to sell said
collateral at public or private sale, or otherwise, at its option,
without notice," etc.

On the 14th day of April, 1909, the Supply Company caused
to be served upon defendant a written notice in words and figures
as follows:

"To S. E. Dunbar, Oklahoma City, Okla. You are hereby
notified that the ten (10) shares of stock of the Dunbar Elec-
trical Supply Company, hypothecated by you to the Commercial
Electrical Supply Company, St. Louis, Mo., to secure the pay-
ment of a promissory note amounting to one thousand two hun-
dred sixty and 58-100 ($1,260.58) dollars, have so greatly de-
clined in value as not to be sufficient security for the aforesaid
note. You are therefore notified that unless you give further
security for the payment of the aforesaid note within twenty-four
hours after service of this notice, that the original ten shares of
stock of the Dunbar Electrical Supply Company, held by us, will
be sold, pursuant to the terms of the agreement signed by you.
Commercial Electrical Supply Company, by Louis T. Nolker,
President and Tr."

Upon receipt of the above notice, defendant wrote W. H.
Nolker, vice president of the Supply Company, requesting that
the action contemplated by the notice be held up until the 25th
of the month, stating that defendant had sold his property, and,
in the event that he made a settlement of certain business by the
date named, he would send a check in full to cover the note, but

provided that, if he did not succeed in getting his business closed up, additional security would be forwarded on the date named. The note was not paid, nor was the additional security furnished. On either June 3 or 4, 1909, the Supply Company sold the ten shares of stock of the Dunbar Electrical Supply Company to W. H. Nolker, for $400 cash, which amount was credited on defendant's note, and on the 31st day of July following suit was instituted in the superior court of Muskogee county to recover judgment for the balance due. On the 18th day of October, 1909, the defendant answered, charging the Supply Company with the conversion of the certificate of stock deposited with it, and charging that said stock, on the date of its conversion, was worth $1,000. Judgment for the difference, or $260.58, was confessed. At the conclusion of the testimony, the court sustained a demurrer to the defendant's testimony and instructed a verdict for plaintiff for $922.46.

The only error assigned, properly before us for consideration, is whether or not the court erred in sustaining the demurrer of the plaintiff below and in directing a verdict. It is urged that the sale of the pledged certificates was made before maturity of the note. This is true. The note, according to its terms, matured on June 3d; and the testimony is that the sale of the stock certificate was made on either June 3d or 4th. What the Missouri law was at that time with reference to days of grace and the time of payment of negotiable instruments, we are not advised. It was neither pleaded nor proven; and we must therefore presume that the laws of the state of Missouri were the same as the laws of this state, in force at that time. *Greenville Nat. Bank v. Evans-Snyder-Bucl Co.,* 9 Okla. 353, 60 Pac. 249; *Mansur-Tebbetts Imp. Co. v. Willet,* 10 Okla. 383, 61 Pac. 1066; *Keagy v. Wellington Nat. Bank,* 12 Okla. 33, 69 Pac. 811; *Betz v. Wilson,* 17 Okla. 383, 87 Pac. 844; *Harn v. Cole,* 20 Okla. 553, 95 Pac. 415.

It is insisted, however, by counsel for defendant in error that the law at the time of trial, and not the law on the date of the maturity of the note, would govern. Section 3650, Stat. Okla. 1890,

allowed three days' grace for the payment of promissory notes, in the absence of an express stipulation to the contrary. This law was in force June 3, 1909; the new Negotiable Instruments Act (Sess. Laws 1909, c. 24) providing that negotiable instruments should be payable at the time fixed therein, without grace, not taking effect until June 11, 1909. Upon this question, we therefore conclude that the note was not due, according to its terms, on the date of the sale of the collateral certificate of stock, and that whether it was June 3d or June 4th.

But it was not alone upon the maturity of the note that the holder of the collateral certificate had the right to make a sale. When it was found that the collateral deposited had declined in value, and on notice given by the pledgee to the defendant, and upon default of additional security being given within 24 hours after receipt of such notice, then the said pledgee had the right, under the express terms of the contract of pledge, to sell at public or private sale, without notice, the said collateral certificate. This notice was given; and defendant defaulted in depositing the additional collateral, as he had agreed to do. True the pledgee did not sell the stock immediately after the expiration of the 24 hours; but this is a fact of which the defendant cannot complain. In fact, he sought the postponement of the sale himself by his letter of April 15th; and it was doubtless due to this fact, in part at least, that the sale was not made at that time.

In *Robinson v. Hurley,* 11 Iowa, 410, 79 Am. Dec. 497, it was said by the court:

"There is nothing in the language or terms of this receipt which obliged the plaintiff to sell these collaterals at the maturity of the note. * * * A postponement of the exercise of this right is a thing of which the debtor cannot very well complain; it only enlarges his opportunity to redeem, and thereby prevent any sacrifice that might result from a forced sale of the pledge. The depreciation in this case, which the scrip in question suffered between the maturity of the note and the sale of the same, was without fault or power of prevention on the part of the plaintiff."

In *Thornton, Adm'r, v. Martin,* 116 Ga. 115, 42 S. E. 348, it was said in the syllabus:

"Where the pledgee is authorized, on or after the nonpayment of the note at maturity, to sell the stock at public or private sale, without advertisement or 'giving any notice' to the maker and pledgor, the sale is not invalid, when made without demand and without notice of the time or place of sale, although not made until long after the maturity of the note."

Jones on Pledges, sec. 606; Schouler on Bailments, p. 202.

The parties, by their special contract, provided that the sale of said certificate of stock might be made in the event of either of the contingencies named therein. This they had the right to do. Jones on Pledges, sec. 610; Schouler on Bailments, p. 111.

In *Hunter v. Hamilton*, 52 Kan. 195, 34 Pac. 782, it is said that the remedy of the pledgee, and the disposition to be made of a pledge of commercial paper upon default of certain contingencies, may be regulated by the agreement of the parties, where such agreement is not fraudulent, or against statute or public policy.

In *Williams v. United States Trust Co.*, 133 N. Y. 660, 31 N. E. 29, the contract of pledge contained a clause providing for a payment on account, or the deposit of additional approved security, in the event of the depreciation in the market value of the securities pledged.

In *Manning v. Shriver*, 79 Md. 41, 28 Atl. 899, the maker of a promissory note pledged, as collateral security for the note, certain shares of stock and a life insurance policy, and agreed to maintain, on demand, ten per cent. margin collateral security during the continuance of the loan; and, on nonperformance of his agreement, or any part of it, he authorized the payee to sell the collateral security at any broker's board, or at public or private sale, at his option. It was held that the authority thus given to sell, upon the "nonperformance of this promise or any part of it," applied as well to the nonperformance of the promise to pay the note at maturity, as to the nonperformance of the agreement to keep up the margin, when so demanded; and a sale of the stock by the payee, on the nonpayment of the note, was not a conversion to his own use. There, as here, the contract pro-

vided that the collateral might be sold upon either of two contingencies; and it was so construed by the court.

In *National Bank of Illinois v. Baker,* 128 Ill. 533, 21 N. E. 510, 4 L. R. A. 586, the contract accompanying the deposit of the collateral security provided for either a public or private sale in default of payment of a note, or in the event of the depreciation in market value of the hypothecated securities. See, also, *Chouteau v. Allen,* 70 Mo. 290; *McDowell v. Chicago Steel Works et al.,* 124 Ill. 491, 16 N. E. 854, 7 Am. St. Rep. 381; *Carson v. Iowa City, etc., Co.,* 80 Iowa, 638, 45 N. W. 1068; Jones on Pledges, sec. 602; Colebrooke on Collateral Securities, sec. 122; Browne on the Law of Bailment, pp. 33, 34.

We have read the record with care, and have been unable to find any controverted question of fact that could properly have been submitted to the jury for consideration. The principal ground urged by counsel for plaintiff in error is that the note was not due on the day that the security was sold. This we hold was immaterial by reason of the second provision in the contract. The effect of this latter provision is not argued by counsel for plaintiff in error.

We are therefore of the opinion that the judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.