## CHADWELL et ux. v. BROWN et al.

No. 10676—Opinion Filed Dec. 19, 1922.

(Syllabus.)

**1. Liens—Extinguishment by Conversion of Property.**

Under and by virtue of section 3843, Rev. Laws 1910, a person holding a lien on personal property extinguishes the lien by wrongfully converting said property to his own use.

**2. Conversion—Definition.**

"Conversion" is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

**3. Replevin—Gist of Action.**

The gist of the action of replevin is plaintiff's right to the immediate possession of the personal property in controversy, at the commencement of the action by reason of his being the owner or having a special interest therein.

**4. Appeal and Error—Review—Sufficiency of Evidence.**

Where there is any evidence in the record to support the judgment of the court in a law action, where a jury is waived, the same will not be reversed on appeal.

**5. Replevin—Conversion—Sufficiency of Evidence.**

Record examined, and held, the evidence is sufficient to support the finding that defendants had converted the property of the plaintiffs to their own use prior to the time of the commencement of the replevin action.

**6. Partnership—What Constitutes.**

A mere community of interest as owners of specific property or of the profits from a particular adventure or business, does not necessarily, of itself, constitute the co-owners partners.

Error from Superior Court, Tulsa County; M. A. Breckinridge, Judge.

Action in replevin by E. M. Brown and another against William Chadwell and wife. Judgment for plaintiffs, and defendants bring error. Affirmed.

Robinson & Mieher, for plaintiffs in error.

Bell & Fellows, for defendants in error.

McNEILL, J. E. M. Brown and Myrtle Jaco, owners of certain furniture, commenced this action in replevin against William Chadwell and wife to recover possession of the furniture and for damages for the wrongful detention. A writ of replevin was issued, and the sheriff served the same, and within 24 hours the defendants executed a redelivery bond, and retained possession of the property. The defendants answered the plaintiffs' petition by filing a general denial.

The material facts are substantially as follows: William Chadwell and wife were the owners of a certain building, and prior to the completion of said building executed a written lease to E. M. Brown for the purpose of operating a rooming house. The lease was for a term of five years for an agreed rental of $5,700, to be paid as follows: $95 the 25th day of each and every month. The lease contained the following provision:

"It is understood and agreed, time is the essence of this provision, that should the part—of second part default in the payment of any installment of the principal sum herein named, the total principal sum shall become immediately due and payable and the party of the first part shall be entitled to the possession to the premises, at his option, and the property of said second party therein contained, and may sell and dispose of said leasehold interest and said property of said second part—at public auction, and the party of the second part, shall be liable to the party of the first part for the remaining sum unpaid and the expenses incident to the collection thereof."

Brown and Myrtle Jaco furnished the house, each owning an undivided one-half interest in the furniture. Myrtle Jaco managed the rooming house and was receiving $40 per month from Brown for running the place. On the 15th day of May, while Myrtle Jaco had gone down town on business, the Chadwells, without any notice or demand, took possession of the rooming house and furniture. Plaintiffs contend that the manner in which the defendants acquired possession amounted to taking possession by force and was unlawful. The defendants, the Chadwells, admit they took possession while the plaintiff Jaco was temporarily absent, but contend the premises were thereafter turned over to them under

facts and circumstances amounting to a surrender of the premises by the plaintiffs. The evidence as to what occurred during the day after the Chadwells took possesion is conflicting. The Chadwells proceeded to conduct and operate the rooming house with plaintiffs' furniture and no attempt was made to foreclose the lien provided for in the lease.

On the 19th day of May, the plaintiffs commenced this action. A jury was waived and the action was tried to the court with request that the court make special findings of fact and conclusions of law.

The court found substantially the following facts: That the building was erected by defendants for the purpose of renting to Brown to conduct a rooming house under a written lease for five years at a rental of $95 per month. That the plaintiffs purchased furniture of the value of $1,500 and placed it in the building. The plaintiffs occupied the premises until the 15th day of May, and had not paid the rent for May, when defendants took possession and ousted the plaintiffs, and continued to run and conduct the premises as a rooming house with the furniture of the plaintiffs since said time. On May 19, 1915, the plaintiffs commenced an action of replevin, and the sheriff took possession of the property, but the defendants gave a redelivery bond and since said time have used the furniture and applied the proceeds to their use and purposes. No attempt had been made by the defendants to sell the lease or the furniture under the redelivery bond, but they used the same as a rooming house. That 44 months less ten days elapsed since the defendants took possession thereof, and the reasonable rental value of the furniture is $15 per month. That the value of the property at the time of the institution of the replevin action was $910 and at the time of the trial was $300. The the defendants by taking possession of the premises and occupying the same released the plaintiff from the terms and conditions of the five-year lease, so far as paying rent was concerned. That defendants were entitled to rent for one-half of May in the sum of $45. The court as a conclusion of law found that plaintiffs were entitled to possession of the property at the institution of the suit. The court then rendered judgment for return of the property or its value, and fixed the value and damages for wrongful detention and settled all the equities between the parties.

For reversal it is argued, first, that this being a replevin action the plaintiffs must prove themselves to be entitled to the im-

mediate possession of the premises at the time of the commencement of the action. Second, where the right of immediate possession does not exist at the commencement of the action, proof of after-acquired rights to possession, or of subsequent loss of right to possession by defendant, cannot confer jurisdiction. Third, the defendants at the time of the commencement of the action had the right to immediate possession of the property in controversy by virtue of a valid landlord's lien.

The defendants in error concede that the first two propositions correctly state the law, but do not agree that the facts disclose the defendants had the right to possession of the property at the commencement of the suit.

The defendants had a lien on the furniture as provided for in the lease. The lease gave defendants the right to take peaceable possession of the property for the purpose of foreclosing their lien, to wit, by selling the lease and furniture at public auction. The lease gave defendants no authority to take possession of the furniture for the purpose of running and operating the rooming house for themselves. When defendants took possession and started the operating and conducting of a rooming house with plaintiffs' furniture, this amounted to a wrongful conversion of the property, and by virtue of section 3843, Rev. Laws 1910, extinguished their lien.

It will only be necessary for us to consider whether there is any evidence in the record to support the judgment of the court, upon the theory that defendants had converted the property to a use inconsistent with their lien, and thereby extinguished their lien.

The evidence is undisputed that the defendants moved into the rooming house with their children, some four or five, and began immediately to operate and conduct a rooming house with plaintiffs' furniture, and conducted the same and used the furniture until the date of the trial, which was almost 44 months after taking possession of the premises. It is true that, prior to the time of filing the suit, the defendants had only been using the furniture for their own use and benefit for a period of four days. Would this amount to a conversion? This court has defined conversion to be:

" 'Conversion' is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

See McClintock v. Parish, 72 Oklahoma, 180 Pac. 689; Sivils v. Aldridge, 62 Okla.

89, 162 Pac. 198. Defendants in their brief contend that four days was not an unreasonable length of time to hold the premises without proceeding to advertise. This would be true if the defendants had taken possession of the furniture and retained the same for the purpose of foreclosing their lien, but the moment they began to appropriate the same to their own use by renting the rooms and using the furniture in said rooms and applying the proceeds to their benefit, they were appropriating the property in a manner inconsistent with their rights. The exact time that a person may hold property upon which he has a lien without foreclosing said lien may depend upon circumstances. When the lienholder takes possession of the property he may be within his rights, but when he appropriates the property to his own use and benefit, that moment he becomes guilty of conversion, and it is not necessary for the owner of the property to wait 30 or 60 days before beginning an action for possession or conversion, because the wrong is committed when the property is wrongfully appropriated.

This court in the case of Halltom v. Nichols & Shepard Co., 64 Okla. 184, 166 Pac. 745, held that where a creditor had attached certain property that had been mortgaged and the mortgagee commenced a replevin action and secured possession of the property under the writ of replevin and took the property out of the state and delivered possession back to the mortgagor, said facts amounted to a conversion. The proposition decided in that case was that the mortgagee is entitled to possession of the property for the purpose of satisfying his lien, but when he obtained possession by virtue of his mortgage and appropriated the property to another purpose than to satisfy his lien, he was guilty of conversion. Counsel for plaintiffs in error rely upon the case of First Nat. Bank of Wellston v. Kreuzberg, 75 Okla. 97, 181 Pac. 717. That case does not support the contention of plaintiffs in error, but, if anything, is against their contention, for in that case the bank secured possession of the property covered by its mortgage by a writ of replevin, and then sold the property under the mortgage lien. The trial court held the selling of the property under the mortgage was a conversion. This court reversed that decision and held that question was not an issue in the replevin action. In other words, after obtaining possession of the property the mortgagee had a right under the mortgage to foreclose and sell the property, and was not guilty of conversion. That holding, when applied to this case, would be, if after obtaining possession of the prop-

erty and after the defendants had given the redelivery bond they had proceeded to foreclose their lien according to law. that fact would not have been an issue in the replevin action.

The court is of the opinion that the evidence is sufficient to support the finding of the court that the Chadwells, by taking possession of the furniture and using it for their own benefit for a period of four days, and applying the profits received to their own benefit, at the time of the institution of the replevin action had wrongfully converted the property and waived their lien, and that the plaintiffs were entitled to possession of the property on said date.

The court in its judgment settled all the equities between the parties as far as possible as of the date of the judgment. This was in accordance with the rule announced in the cases of Brook v. Bayless, 6 Okla. 568, 52 Pac. 738, and Haltom v. Nichols & Shepard Co., supra.

The plaintiffs in error next contend there is a variance between the pleadings and proof, because the proof discloses the plaintiffs were partners and the action should be brought in the name of the partnership and not as individuals. The evidence is not conclusive that the parties were partners; they were joint owners of the property in a rooming house. One of the parties was paid $40 per month by the other for conducting the rooming house.

This court in the case of Gorman v. Carlock, 72 Oklahoma. 179 Pac. 38, stated:

"A mere community of interest as owner of specific property or of the profits from a particular adventure or business does not necessarily, of itself, constitute the co-owners partners."

The evidence in this case we think comes squarely within the rule therein announced. It does not appear that this question was presented to the trial court. The finding of the court would be a finding that no partnership existed. We think there is evidence to support the finding that there was no partnership.

For the reasons stated, the judgment is affirmed.

KANE, JOHNSON, MILLER, and COCHRAN, JJ., concur.