## FIRST NAT. BANK OF HENRYETTA v. WESSON.

No. 13346—Opinion Filed April 7, 1925.

1. **Chattel Mortgages—Mere Temporary Removal of Property—Seizure by Mortgagee as Conversion — Replevin by Mortgagor —Verdict—Sufficiency of Evidence.**

In an action of replevin by mortgagor to recover property alleged to have been wrongfully taken by the mortgagee, a verdict for the plaintiff is reasonably supported by the evidence where it appears that the mortgagor used the mortgaged wagon and team for the temporary purpose of going on a fishing and hunting trip into a county other than that of his residence, leaving his family at his home where he had resided a number of years, and intending to return within a reasonable time, the breach of condition in the mortgage relied on to support the seizure being the condition against removal of the property from the county of mortgagor's residence.

2. **Same — Wrongful Seizure and Transfer by Mortgagee as Conversion.**

In such cases, where the mortgaged property is seized by the mortgagee before maturity of the mortgage and delivered to a stranger who takes an assignment of the note and mortgage, such transaction being private and not pursuant to any kind or character of foreclosure sale, the transfer so made constitutes a conversion of the property by the mortgagee.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from County Court. McIntosh County; E. I. O'Reilly. Judge.

Action by W. P. Wesson against Eul Walthall and the First National Bank of Henryetta, Okla., in replevin and for damages. Judgment for plaintiff, and defendant First National Bank of Henryetta brings error. Affirmed.

This action was commenced November 15, 1916, by plaintiff filing his petition in the county court of McIntosh county against the defendants for recovery of the possession of a team of mules and wagon and harness alleged to be unlawfully detained by the defendants, and for damages for such unlawful detention. The answer was a general denial.

It appears that the plaintiff had resided with his family in Henryetta for 15 or more years, and that he had been dealing with the First National Bank of Henryetta for a period of about ten years. That on February 4, 1916, he executed a note to said bank for the sum of $135.75, bearing interest at 10 per cent. and due December 4, 1916. To secure the payment of this note he executed a mortgage bearing the same date covering the property involved in this action and containing the usual provision of chattel mortgages that it should secure any other indebtedness owing by the mortgagor to the mortgagee at the maturity thereof, and providing that the property covered by the mortgage should not be sold or removed without the written consent of the mortgagee. August 11, 1916, plaintiff executed a second note to the bank for the sum of $10.50, payable September 1, 1916. Sometime during the fall of 1916, the exact date not being disclosed by the record, plaintiff went on a fishing and hunting trip to Sequoyah county in the vicinity of Vian where several of his relatives resided. He left his family at his home in Henryetta. Early in November, 1916, the defendant bank procured a certified copy of this mortgage and placed it in the hands of a constable with directions to follow and locate the plaintiff and take possession of the property. No inquiry appears to have been made of members of plaintiff's family in Henryetta to ascertain where he had gone or the length of his intended absence. This constable located the property at the home of a Mr. Clark, who had married a cousin of the plaintiff. Mr. Clark stated to the constable that the plaintiff would return the next day, and asked him to await his return, but the constable took charge of the property and conveyed it into the town of Checotah. The record further discloses that the plaintiff returned to Clark's home the next day and immediately went to Checotah to see the constable, where he offered to pay

him $80 on the indebtedness, whereupon the constable called up the defendant bank and was instructed by the bank not to accept anything less than the full amount of the indebtedness with all costs and expenses of the constable. Thereupon the property was taken by the constable and delivered to the defendant bank, or at least to the place designated by the bank. Thereupon the plaintiff, through his attorney and through another bank, made two or three tenders to the defendant bank, which some of the testimony discloses included everything claimed by the defendant bank against the property. These tenders being refused this action was commenced November 15, 1916, but plaintiff was unable to give the replevin bond required by law so as to resume possession of the property. Thereafter, on November 18, 1916, the defendant bank, without any foreclosure proceedings of any kind, delivered the property to one Kaler and assigned to him the two notes above referred to, said assignment being made "without recourse."

Upon the trial the jury returned a verdict in favor of plaintiff for the sum of $350 "less the amount of indebtedness proved due from plaintiff to the defendant and the expenses in the recovery of the personal property by the defendant in this action, to wit: $200." After unsuccessful motion for new trial defendant, the First National Bank of Henryetta. has brought the case here for review by petition in error with case-made attached. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Hummer & Foster and R. E. Simpson, for plaintiff in error.

John F. Vaughan, for defendant in error.

Opinion by LOGSDON, C. Several assignments of error are made in the petition in error, but only two propositions are urged for reversal in the brief of defendant. The first proposition reads:

"Under the undisputed evidence in this case the defendant, First National Bank, as a matter of law was entitled to possession of the property at the time such possession was taken."

This contention is based upon the claim that the terms and conditions of the mortgage had been broken by reason of the plaintiff taking said property with him upon this fishing and hunting trip into Sequoyah county. No effort was made by the defendant to prove that the plaintiff was upon other than a temporary visit upon this occasion, and no effort was made to show that he took said

property away from Henryetta with the intention of concealing or removing it permanently to another location. On the contrary, the testimony of the plaintiff is clear and convincing that for a long number of years he had been in the habit each year of making this kind of a trip to Sequoyah county for the purpose of visiting his relatives living there, and for the purpose of fishing and hunting, and that this was his purpose on this occasion.

It is provided by section 7659, Comp. Stat. 1921 (Rev. Laws 1910, sec. 4039), that:

"If the mortgagor voluntarily removes or permits the removal of the mortgaged property from the county in which it was situated at the time it was mortgaged, the mortgagee may take possession and dispose of the property as a pledge for the payment of the debt, though the debt is not due."

By section 8204, Comp. Stat. 1921, it is provided:

"The sale by a pledgee of property pledged must be made by public auction, in the manner and upon the notice to the public usual at the place of sale, in respect to auction sales of similar property, and must be for the highest obtainable price."

That section 7659, supra, was not intended to interfere with or circumscribe the reasonable use by the mortgagor of the mortgaged property is too clear to require argument, the general theory of our mortgage law being to leave title and right of possession of the property in the mortgagor, subject only to the lien. The lien gives no right of control or possession to the mortgagee until breach of some condition matures the mortgage. By section 7652, supra, the transitory use of personal property by the mortgagor is recognized and its situs during such transitory use is fixed in the county of the mortgagor's residence. Filing of the mortgage in that county is notice to the world, until the property "is permanently located" in another county as determined by section 7651, supra, when a new filing is required. First Nat. Bank of Vinita v. Guess et al., 72 Okla. 125, 179 Pac. 29.

It is therefore concluded upon the first proposition that the verdict of the jury to the effect that there was no breach of the condition of the mortgage against removal is reasonably supported by the evidence, and is not contrary to law.

Defendant's second proposition reads:

"After breach of chattel mortgage and possession taken by the mortgagee, in order to discharge the mortgage lien, it is necessary for the mortgagor or his agent to tender to the mortgagee not only the principal and interest due but all costs which have been incurred in taking possession of the property up to the time of the tender."

No breach of the terms and conditions of the mortgage by the removal of the property from Henryetta on this occasion being shown, the only other ground upon which the seizure of the property by the bank on this occasion could be sought to be justified is that the $10.50 note was due on September 1. No demand for payment of this note was made prior to the seizure. A complete answer to this contention, if it be relied upon, is that the next day after the property was seized, and as soon as he learned of the seizure, plaintiff in person made a tender of $80 to the constable who had the property in charge, which was more than enough to pay the principal and interest of the $10.50 note and the expenses and per diem of the constable, who states that his fees and expenses amounted to $40. The principal note for $135.75 was not due until December 4. The execution and delivery by the plaintiff of the $10.50 note maturing September 1 did not change the maturity of the original note nor accelerate the maturity of the mortgage. It merely operated to increase the amount of indebtedness against the mortgaged property which could be enforced on or after December 4 on default on the part of the plaintiff at that time. Defendant showed no right to the possession of the property at the time it had the constable seize the same, and it certainly had no right to refuse the tender made by the plaintiff covering the indebtedness then due under the mortgage, which included the $10.50 note and the fees and expenses of the constable, amounting in the aggregate to $50.50. The $80 tendered at that time was sufficient to extinguish every claim of the bank against the plaintiff then due it and to give the plaintiff a credit upon his original note.

There is ample evidence in the record to sustain the finding of the jury and to support the judgment of the court based thereon. It is, therefore, recommended that the judgment of the trial court in this action should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 11 C. J. pp. 553, 544 §§ 250, 251. (2) 11 C. J. p. 589 § 284.