## BURKE v. TARRANT INV. CO.

No. 21065.    Nov. 14, 1933.

Wm. Blake, Edward J. Fleming, and Arden E. Ross, for plaintiff in error.

Chas. P. Gotwals, John T. Gibson, William A. Killey, and James D. Gibson, for defendant in error.

OSBORN, J. This action was filed in the district court of Tulsa county by the Tarrant Investment Company, a corporation, against J. E. Burke for a balance due on a promissory note. The cause went to trial before a jury, and at the conclusion of the evidence the court instructed a verdict in favor of plaintiff for the unpaid balance due on the promissory note, with interest, from which order of the court defendant has appealed. Parties will be referred to as they appeared in the trial court.

On August 20, 1920, defendant executed and delivered to the First National Bank, Ft. Worth, Tex., a promissory note in the sum

of $3,500, due 60 days from date. As security therefor, defendant hypothecated or pledged to the bank a diamond ring and a diamond brooch set with 65 diamonds. The terms and provisions as to the pledge of said security provided in said note are as follows:

"* * * And to secure the prompt payment of this note, I have sold and do hereby sell, transfer and set over to the said the First National Bank of Fort Worth, Tex., the collateral and property named hereafter, to wit:

"One diamond ring, 2½ carats, more or less,

"One diamond brooch set with 65 diamonds,

—"which collateral and property the bank is hereby granted the option to purchase and is authorized to collect or sell at public or private sale, without or with notice, and to apply the proceeds to the payment of this note and of any other indebtedness of mine to said bank, and interest and costs of collection. Neither this bank nor its assigns shall be liable for any failure or neglect to collect any paper or realize on any collateral hereby pledged, nor to preserve the liability of any signer or indorser.

"The undersigned hereby gives to the bank a lien for the amount of all such obligations and liabilities upon all the property or securities now or at any time hereafter given unto or left in the possession of the bank by the undersigned, whether for the express purpose of being used by the bank as collateral security, or for any other or different purpose, and also upon any balance of the deposit account of the undersigned, or any of them, with the bank.

"J. E. Burke."

The note was not paid when due, and on June 1, 1921, the diamonds were sold by the bank at private sale for the sum of $1,550, which sum was credited on the note. The sale was made to a pawnbroker without notice to defendant and without advertising. Thereafter the note was credited with the sums of $1.74 and $19.80, being the amounts on deposit in said bank to the credit of the defendant.

Thereafter the note was transferred and delivered to the Tarrant Investment Company, plaintiff herein, and on July 25, 1925, this action was commenced for the unpaid balance of $1,980, with interest and attorney's fees.

The original petition recited that the plaintiff had purchased the note prior to maturity, but thereafter an amended petition was filed in which it was alleged that plaintiff had acquired the note after maturity. Defendant filed an answer and cross-petition in which he alleged that the reasonable market value of the diamonds was $5,000 and that the action of the bank in selling said diamonds without notice to him and without advertising was an unlawful and void sale and constituted conversion of said property. It was also alleged that the Tarrant Investment Company was an organization owned and controlled by the officers of the First National Bank, organized for the sole purpose of cheating and defrauding persons doing business with said bank by taking over the collections of notes and mortgages of said bank and thereby preventing and barring any defense the makers of said notes and mortgages might have against said bank, and that the note was in fact the note of the First National Bank.

An effort on the part of the trial court to have the First National Bank made a party to this action failed on account of the nonresidence of said bank.

Defendant contends that the Tarrant Investment Company and the First National Bank are in truth and in fact the same corporate entity, and the purported transfer of the promissory note was in fact a fictitious transaction made for the sole purpose of barring any legitimate defenses he might have against the original payee of the note. Plaintiff contends that, although the personnel of the two corporations is practically the same, they are two separate corporate entities and as such are entitled to deal with each other, and that there was no fraud in the transaction.

Neither principle has application here. The only question is whether or not plaintiff is a holder of the note in due course, and, as such, takes the same free from infirmities or defenses available to the original parties as provided by section 11356, O. S. 1931. By the provisions of section 11351, O. S. 1931, it is required that the holder in due course must have acquired the instrument before maturity. Gabriel v. Willis, 133 Okla. 18, 270 P. 840. This effectually fixes the status of the plaintiff. In view of this situation, the maker of the note may present any defenses herein which would be available against the original payee. Bartels v. Suter, 130 Okla. 7, 266 P. 753.

Defendant has entered a plea of conversion of the property pledged. It is admitted that the property was sold without notice and without advertising, but plaintiff argues a waiver thereof by virtue of the provisions of

the contract of pledge hereinabove quoted. Therefore, the validity of said contract is the principal issue.

Although the transaction involved occurred in the state of Texas, the laws of Texas were not pleaded nor proved, and it will be presumed that such laws are the same as the laws of this state. Dunbar v. Commercial Electrical Supply Co., 32 Okla. 634, 123 P. 417; Palmer v. Noe, 48 Okla. 450, 150 P. 462.

In this connection our statutes provide a method of procedure for the sale of pledged property which is amply sufficient to protect the rights of both pledgor and pledgee. Sections 11706-11717, O. S. 1931. Section 11706, O. S. 1931, provides:

"When performance of the act for which a pledge is given is due, in whole or in part, the pledgee may collect what is due to him by a sale of the property pledged, as hereinafter prescribed."

Section 11707, O. S. 1931, provides that before property pledged can be sold, and after maturity of indebtedness secured thereby, the pledgee must demand performance from the debtor if the debtor can be found; but section 11710, O. S. 1931, prescribes how a waiver thereof is effected. Section 11708, O. S. 1931, provides for the giving to the pledgor actual notice of the sale; but section 11709, O. S. 1931, provides that such notice may be waived by the pledgor at any time.

Section 11711, O. S. 1931, provides:

"The sale by a pledgee, of property pledged, must be made at public auction, in the manner and upon the notice to the public usual at the place of sale, in respect to auction sales of similar property, and must be for the highest obtainable price."

Section 10940, O. S. 1931, provides:

"Contracts of mortgage and pledge are subject to all the provisions of this chapter."

Section 10952, O. S. 1931, provides:

"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

Section 10946, O. S. 1931, provides:

"All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void, except in the case specified in section 1122."

Section 9486, O. S. 1931, provides, in part:

"Those contracts are unlawful which are: First. Contrary to an express provision of law. Second. Contrary to the policy of express law, though not expressly prohibited; or * * *"

There are many authorities from other states where the rule is announced that parties may enter into a contract of pledge wherein they stipulate the pledged property may be sold at public or private sale, and that said contract is valid. By the provisions of the statutes above quoted, however, it is manifest that in this state the public policy has been laid down by express statutory provisions. It was the legislative intention to close the door to possible fraud by requiring a public sale of pledged property after due notice as provided by law, and by the provisions of section 10946, supra, "all contracts in restraint of the right of redemption from a lien are void."

This question was not clearly adjudged in Clinton National Bank v. McKennon, 26 Okla. 835, 110 P. 649, but it is evident that the court had in mind this construction of the statutes. In the case of Abraham v. Builders' Material Co., 115 Okla. 141, 242 P. 205, the court, after quoting certain of the statutes above quoted, used the following language:

"These provisions of the statutes are clear, and need no explanation, and we see no reason why the same should not be followed by this court. They are plain statutory provisions, from a reading of which it may readily be seen that one in possession of personal property may sell same in the manner as provided for the sale of property held as a pledge, and the above sections provide for the manner in which the sale of property pledged should be conducted, which are unambiguous and are reasonable and just provisions of law, and under these various provisions of our law it is incumbent upon the pledgees or holders of the personal property to demand performance of the debtor, give actual notice of the time and place of sale, and to sell said property at public auction for the highest price obtainable."

The general rule is well stated in 13 C. J. 420, par. 351, as follows:

"Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention. and an agreement of the kind voided by statute is unlawful."

The statutes above quoted are plain in intent and need no interpretation or construction. They mean just what they say.

Dire necessity often prompts the pledging of property as security for indebtedness. Pledge contracts are frequently entered into without careful examination of their provisions. Such contracts are generally prepared by the pledgee and many of the provisions thereof are sometimes printed in fine print, and the pledgor rarely takes time to examine the contract minutely. Recognizing this situation, the Legislature enacted the above protective measures, which we believe are salutary and wholesome.

Plaintiff relies upon Ardmore State Bank v. Mason, 30 Okla. 568, 120 P. 1080, and the case of Dunbar v. Commercial Electrical Supply Co., 32 Okla. 634, 123 P. 417. In the former case, the findings of fact by the trial court excluded the necessity for discussing the question under consideration herein. In each of the cases the effect of sections 10964 and 9486, supra, were not considered, and in the latter case, authorities are cited from states not having the express policy as set forth in the above-quoted statutes.

We, therefore, hold that the sale of said property, not in conformity with the provisions of the above statutes, constituted a conversion of said property. First National Bank of Henryetta v. Wesson, 109 Okla. 225, 235 P. 595; Wilson Motor Co. v. Dunn, 129 Okla. 211, 264 P. 194; Chadwell v. Brown, 88 Okla. 44, 211 P. 410.

Since the sale of the pledged property constituted a conversion thereof, and since plaintiff is in no better position than the First National Bank, being a purchaser of said note after maturity, defendant was entitled to plead and prove any defenses available against the original payee. The evidence discloses, however, that the First National Bank, and not plaintiff, converted said pledged property. The bank was not a party to this action, and the trial court was correct in holding that the defendant could not recover on his counterclaim. But the court overlooked the fact that the wrongful conversion of said property by the bank was pleaded as a set-off against the cause of action by plaintiff. To the extent of the value of the property converted, defendant pleaded a good and valid defense, and supported same with some proof, and the court was in error in instructing the jury to return a verdict in favor of plaintiff.

The trial court, in passing on a motion for new trial, dictated into the record his view of the law that sale was void for the reason that the provision of the contract was in derogation of the right to redeem; but the trial court erroneously applied the law to the facts in this case, in that the pleadings admit that plaintiff was not a holder in due course.

The cause should have been submitted to the jury under proper instructions to determine the value of the converted property and to offset same against the claim of plaintiff.

The cause is therefore reversed and remanded for a new trial, with directions to the trial court to proceed in accordance with the views herein expressed.

RILEY, C. J., and SWINDALL, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and ANDREWS, J. absent. McNEILL, J., disqualified.