2010 OK CIV APP 120

**FIRST UNITED BANK & TRUST CO., a state banking corporation, Plaintiff/Appellee,**

v.

**Glenn S. PENNY, Defendant/Appellant.**

**No. 108,207.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 23, 2010.

Heather Burrage, Burrage Law Firm, Durant, OK, for Plaintiff/Appellee.

William A. Gossett, Duncan, OK, for Defendant/Appellant.

DEBORAH B. BARNES, Judge.

¶1 This accelerated appeal[1] involves a lender's action to collect on amounts owed by a debtor on a promissory note. Glenn S. Penny (Debtor) appeals the trial court's Journal Entry of Judgment, filed on March 17, 2010, granting appellee First United Bank & Trust Co.'s (Bank) motion for summary judgment. Debtor executed a promissory note (the Note) in favor of Bank in the amount of $4,306,510, secured by stock. Debtor defaulted within a few months. Although Bank liquidated the collateral, there remained $615,058.71, plus accruing interest

---

1. This appeal has been assigned to the accelerated docket and stands submitted without appellate briefing pursuant to Okla.Sup.Ct.R. 1.36, 12 O.S. Supp.2004, ch. 15, app. 1.

and reasonable attorney fees owed, as set forth in the Judgment.

¶ 2 On appeal, Debtor argues that the trial court erred in granting summary judgment in favor of Bank because genuine issues of material fact exist as to whether Bank failed to discharge the duty to liquidate collateral in a commercially reasonable manner by either failing to properly monitor the market price of certain shares of stock or by ignoring the decreasing market value thereof.[2] Upon our review of the record and applicable law, we find the trial court did not err in granting summary judgment in favor of Bank. We affirm.

## UNDISPUTED MATERIAL FACTS

¶ 3 The following are the material facts as to which there is no substantial controversy:

1. On January 17, 2008, Debtor, for value received, made, executed and delivered to Bank, the Note of that date, in writing, whereby Debtor promised to pay the sum of $4,306,510, plus interest as stated, with a maturity date of January 17, 2009.[3]

2. Pursuant to the terms of the Note,[4] the loan was secured by a brokerage account in Debtor's name. The account contained $4,100,000 in cash.[5] Debtor also pledged to Bank as collateral 50,000 shares of a publicly traded company named Flotek Industries, Inc. (Flotek).[6]

3. The Note provides [7] that "Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. . . . Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone."

4. On April 17, 2008, Bank's officer, Jerrad Besch, sent an email to Debtor, requesting Debtor provide more shares for collateral for the loan. Besch notes the trading value of the Flotek stock and states that "we are currently short about $390K. Is it possible to send more [F]lotek shares either to myself or to Danny? At today's price you would need approx. 35,000 shares more." [8]

5. In the spring of 2008, Debtor became delinquent on payments due pursuant to the Note.[9] In an effort to assist Debtor, and at the request of Debtor, Bank worked with him to assist Debtor in bringing the loan current and allowed Debtor ample time to procure additional collateral to secure the Note.[10]

6. In October 2008, it became clear to Bank that Debtor would not bring the loan current or pledge additional collateral to secure the loan.[11]

7. Bank liquidated the stock by selling it on the open market for fair market value in late October 2008 and early November 2008, for $3.00 per share.[12]

8. The market price for the Flotek shares dropped after the Note was executed and

---

**2.** Record (R.), Tab 6, "[Debtor's] Response and Objection to [Bank's] Motion for Summary Judgment," pp. 3, 6, and 7.

**3.** R., Tab 5, "Promissory Note," which is a renewal of an existing debt.

**4.** R., Tab 5, at p. 2 of the Note, at the paragraph entitled "Collateral." Apparently, there was a separate "Collateral Pledge Agreement" involved in this transaction; however, it is not part of the appellate record before this Court.

**5.** *Id.*

**6.** R., Tab 5 and Tab 6, at p. 2.

**7.** R., Tab 5, at p. 2 of the Note, at the paragraph entitled "General Provisions."

**8.** R., attachment to Tab 6.

**9.** R., Tab 5, attached Affidavit of Dennis Garrett, Bank's officer.

**10.** *Id.*

**11.** *Id.*

**12.** *Id.*, and R., Tab 6, attached Affidavit of Debtor.

before Debtor defaulted.[13] The price ranged from a low of $10.00 per share to a high of over $21.00 per share during the time period from April 2008 until early October 2008.[14]

9. The proceeds of the sale of collateral were insufficient to cover the outstanding balance on the loan. As of December 11, 2008, Debtor was still indebted to Bank for $615,058,[15] with interest accruing at the agreed default rate of 21 percent per year.[16]

10. Bank sued Debtor on December 17, 2008, seeking payment of the $615,058 outstanding loan balance plus interest, as well as reasonable attorney fees and costs of collection.[17] Debtor answered and counterclaimed for "damages greater than the amount sued for by [Bank], with such difference being in the amount of more than $10,000.00."[18]

¶ 4 On January 13, 2010, Bank filed its motion for summary judgment, asserting there was no substantial controversy as to any material fact regarding its claim or Debtor's counterclaims, to which Debtor responded. The trial court granted Bank's motion for summary judgment in its Judgment filed on March 17, 2010, from which Debtor now appeals.

## STANDARD OF REVIEW

¶ 5 Summary judgment may be granted when there is no substantial controversy as to any material fact. Rule 13(a), Rules for District Courts, 12 O.S. Supp.2002, ch. 2, app. The standard of review on the entry of judgment granting summary relief is *de novo. Jennings v. Badgett,* 2010 OK 7, ¶ 5, 230 P.3d 861, 864. We review rulings on issues of law pursuant to the plenary power of the appellate courts without deference to the trial court. *Id.*

13. R., Tab 6, Exh. 4.

14. *Id.*

15. R., Tab 5, "[Bank's] Motion for Summary Judgment," p. 3.

16. *Id.*

17. R., Tab 2, "Petition."

## ANALYSIS

¶ 6 Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions or other evidentiary materials show there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Tucker v. ADG, Inc.,* 2004 OK 71, ¶ 11, 102 P.3d 660, 665. A party opposing a motion for summary judgment must show "the reasonable probability, *something beyond a mere contention,* that the opposing party will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact in his favor on the issue in dispute." *Davis v. Leitner,* 1989 OK 146, ¶ 15, 782 P.2d 924, 927. (Emphasis added.) Rule 13(b), Rules for District Courts, 12 O.S. Supp.2002, ch. 2, app., provides, in part, that "[a]ll material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material." Where no effort has been made to refute an argument, the correctness of the argument may be deemed to be conceded. *Sasseen v. State Board of Equalization,* 1961 OK 152, ¶ 5, 363 P.2d 252, 253–54.

¶ 7 Sale of collateral must be conducted in a commercially reasonable manner. Title 12A O.S.2001 § 1–9–610(b) provides that: "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."

¶ 8 Debtor specifically limits his collateral sale challenge on appeal. He states he does not challenge Bank's sale of the stock under 12A O.S.2001 § 1–9–627(b),[19] but rather al-

18. R., Tab 3, "Answer and Counterclaim."

19. Title 12A O.S.2001 § 1–9–627(b), provides that:

   (b) A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

   (1) in the usual manner on any recognized market;

leges a claim, outside the Uniform Commercial Code (Code) provisions, that Bank "was negligent in either failing to monitor the price of the Flotek Shares after [Debtor's] default, or in ignoring the market value decline of the Flotek Shares." [20]

¶ 9 The record does not specify the specific market in which Bank sold the Flotek shares; [21] however, there was undisputed evidence that Bank sold the shares at their then fair market value, thus satisfying § 1–9–627(b)(2). Although the comments to the Code and corresponding Oklahoma statutes are not binding, we do find them persuasive. *See Wilkerson Motor Co. v. Johnson,* 1978 OK 12, ¶ 7, 580 P.2d 505, 507. The Oklahoma Code comments state in relevant part that "[t]he reasonableness of the sale is determined by the manner of the sale and not the price. Price is a component of the sale which a court may consider, but is not alone determinative." Comment 5 to § 1–9–610. (Citations omitted.) The comment to § 1–9–627 cites *First National Bank and Trust Company of Enid v. Holston,* 1976 OK 196, ¶ 10, 559 P.2d 440, 444, for the proposition that the "price received is not determin[a]tive of the issue" of commercial reasonableness.

¶ 10 Further, the Oklahoma Supreme Court has established that:

The secured party is required to utilize his best efforts to sell the collateral for the best price and to have a reasonable regard for the debtor's interest. The commercial realities are that the secured creditor will generally try to obtain the highest possible price for collateral since recovery of any deficiency is usually dubious. *He is not, however, required to anticipate the course*

*a market will take.* If the secured party sells the collateral in the usual manner in any recognized market, or if he sells at a price current in the market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.

*Id.* at ¶ 10, 559 P.2d at 444–45. (Footnotes omitted and emphasis added.)

¶ 11 Noting the Code provisions have been satisfied, Debtor specifically states [22] that he is "not alleging that the fact that the disposition of the Flotek Shares could have brought more money if sold at a different time was, in and of itself, the cause of such disposition being commercially unreasonable." [23] Debtor also does not dispute the fact that Bank did not dispose of the collateral during the time it gave Debtor time to get his loan out of default, a fact supported by the affidavit of Dennis Garrett, an officer of Bank.[24]

¶ 12 Instead, Debtor alleges a lack of commercial reasonableness in the sense that Bank was "negligent in either failing to monitor the price of the Flotek Shares after [Debtor's] default, or in ignoring the market value decline of the Flotek Shares." [25] To defeat summary judgment, Debtor would have to establish the existence of this alleged duty of Bank to monitor the price of the shares and disputed facts as to whether Bank

---

(2) at the price current in any recognized market at the time of the disposition; or
(3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

**20.** R., Tab 6, at p. 6.

**21.** Evidence was submitted that shares of Flotek were traded on the New York Stock Exchange. R., Tab 6, Exh. 3. Assuming Bank sold the shares on the New York Stock Exchange, this would constitute a "recognized market" under § 1–9–627(b)(1). *See* Code, 12A O.S.2001 § 1–9–

627, comment 4 ("[T]he concept of a 'recognized market' in subsections (b)(1) and (2) is quite limited; it applies only to markets in which there are standardized price quotations for property that is essentially fungible, such as stock exchanges.").

**22.** R., Tab 6, at p. 6.

**23.** *Id.*

**24.** R., Tab 5, Affidavit of Dennis Garrett.

**25.** R., Tab 6, at p. 6.

breached this duty. In effect, Debtor's argument would have this Court place Bank in the position of Debtor's investment advisor. This we decline to do.

¶ 13 The loan transaction, secured by stock, is governed by the Code.[26] The Code provides that "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession." 12A O.S. Supp.2006 § 1–9–207(a). Although the Code requires a secured party (Bank) to maintain custody and preserve stock as collateral in its possession, this does not mean Bank will be liable for a fall in stock prices.

¶ 14 Whether there is a duty of Bank, as a pledgee of stock (the value of which is subject to fluctuating market conditions) that secures a promissory note to the Debtor as pledgor to preserve the stock's *value* during the period of pledge pursuant to § 1–9–207 appears to be an issue of law and a matter of first impression in Oklahoma.[27] Other jurisdictions have found that a pledgee's duty with regard to pledged stock is confined to physical care, and a pledgee will not be liable for a decline in value.[28] In *Tepper v. Chase Manhattan Bank, N.A.,* 376 So.2d 35 (Fla. Dist.Ct.App.1979), the trial court's grant of summary judgment on the debtor's counterclaim against the bank for failure to preserve the value of pledged securities for a promissory note the bank recovered a judgment upon was upheld by the appellate court pursuant to § 9–207. In *Tepper,* the court stated that "the general law is that a pledgee's duty with regard to the care of the pledged chattel is confined solely to the physical care of the chattel and a pledgee is not liable for a decline in the value of pledged instruments. In other words, the burden is upon the pledgor to preserve the value of the security." *Id.* at 36. The *Tepper* court also noted that the promissory note, as in the case before this Court, gave the bank the right, but not the obligation, to sell the stock.

¶ 15 Likewise, in *Capos v. Mid–America National Bank of Chicago,* 581 F.2d 676 (7th Cir.1978), the debtor sued the bank for breach of an alleged duty to foreclose on stock given as collateral when its value fell to the vicinity of the amount owed. The *Capos* debtor, like Debtor in this case, never instructed the bank to sell the stock. The loss was, "quite simply, an investment loss, the investment was Capos', not [the bank's] . . . ." *Id.* at 680. The *Capos* court stated:

> [The bank] urges us to affirm the district court judgment on the alternative ground that a bank has no duty to its borrower to sell collateral stock of declining value. We think it appropriate to do so. It is the borrower who makes the investment decision to purchase stock. A lender in these situations merely accepts the stock as collateral, and does not thereby itself invest in the issuing firm. Nor,

---

26. Title 12A O.S.2001 §§ 1–9–101 *et seq.*

27. *But see Dunbar v. Commercial Electrical Supply Co.,* 1912 OK 292, 123 P. 417, a case decided long before the Code, first enacted in 1952, wherein the Court considered an issue regarding which of two statutes (one applying a grace period, the other did not) applied to a promissory note. The *Dunbar* Court noted that the stock pledged to secure the promissory note had greatly declined in value. "True the pledgee did not sell the stock immediately after the expiration of the 24 hours; but this is a fact of which the [debtor] cannot complain. In fact, he sought the postponement of the sale himself . . . and it was doubtless due to this fact, in part at least, that the sale was not made at that time." *Id.* at ¶ 6, 123 P. at 418. The Court, quoting *Robinson v. Hurley,* 11 Iowa 410, 79 Am. Dec. 497 (1861), stated:

> There is nothing in the language or terms of this receipt which obliged the plaintiff to sell these collaterals at the maturity of the note. . . .

> A postponement of the exercise of this right is a thing of which the debtor cannot very well complain; it only enlarges his opportunity to redeem, and thereby prevent any sacrifice that might result from a forced sale of the pledge. The depreciation in this case, which the [stock] in question suffered between the maturity of the note and the sale of the same, was without fault or power of prevention on the part of the [bank].

*Id.* at ¶ 7, 123 P. at 418.

28. *Cf., see Citibank, N.A. v. Data Lease Financial Corp.,* 828 F.2d 686, 697 (11th Cir.1987)(where the pledged stock represented a controlling interest of the corporation and the pledgee bank became involved in the management of the company, an exception to the general rule—that the care of a pledged chattel is confined solely to the physical care of it and that a pledgee is not liable for a decline in value—may allow a breach of duty to be found.) Such is not the case before this Court, however.

unless otherwise agreed, does the lender undertake to act as an investment adviser, although imposing a duty on the lender to sell the stock at the "reasonable" time would foist that role upon it. Not surprisingly, Illinois common law did not impose a duty on a pledgee to sell shares of stock at any time or liability for depreciation of the shares' value while in his possession."

*Id.* (Citation omitted.) [29]

¶ 16 In a case similar to the one before this Court, *New Jersey Bank v. Toffler*, 139 N.J.Super. 161, 353 A.2d 116 (N.J.Super.A.D.1976), the bank sued to recover the balance of a loan collateralized by pledged stock. The debtor counterclaimed, alleging the bank neglected to protect and to preserve the value of the securities pledged and that along with this duty of reasonable care come disputed factual questions as to whether the bank acted reasonably. The bank notified the debtor of the decline in value and the debtor made no request that the collateral be sold. Relying on Code § 9–207, the trial court rejected the debtor's assertion and granted summary judgment in favor of the bank. The debtor appealed. In affirming the trial court's grant of summary judgment, the *Toffler* court found that § 9–207's "custody and preservation of collateral" obligation did not extend to holding a pledgee liable for a decline in the value of pledged instruments as a matter of law, absent a showing of bad faith or negligent refusal to sell after demand, neither of which occurred in the *Toffler* case or in the case before this Court.

¶ 17 In this case, Debtor does not dispute he requested Bank not to sell the Flotek stock while Debtor tried to become current on his Note obligation. Debtor does not dispute that Bank, in fact, emailed Debtor about the decline in share value and demanded additional collateral. The Note provides that Bank had no duty to preserve *the value* of the stock or to take any action in connection with management of the collateral. In fact, the Note provided:

Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. . . . Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.

¶ 18 The party opposing the motion for summary judgment must attach supporting evidentiary materials to show there is a material disputed fact. *See Tucker v. New Dominion, L.L.C.*, 2010 OK 14, ¶ 11, 230 P.3d 882, 885. This Debtor failed to do.

¶ 19 Therefore, as a matter of law, we find pursuant to these undisputed facts, Bank had no duty to "monitor" the decline of Flotek's shares. As stated in the *Capos* case, it is the borrower who makes the investment decision regarding stock. In accepting stock as collateral, a bank does not take on the responsibility of becoming the borrower's investment advisor. Without a duty owed, Debtor's negligence theory cannot be sustained. *Sloan v. Owen*, 1977 OK 239, ¶ 7, 579 P.2d 812, 814.

¶ 20 In the case of a default secured by a stock pledge, the pledgee's duty of reasonable care pursuant to § 1–9–207 to preserve the collateral is satisfied when the collateral is sold in good faith and in a commercially

---

**29.** Likewise, *see Federal Deposit Insurance Corporation v. Floyd*, 854 F.Supp. 449, 452 (N.D.Tex. 1994)(bank as pledgee was under no duty to sell the depreciating collateral stock, absent a reasonable request by the pledgor: "[t]here is no reason why the secured party should have to bear the risk of a rise or fall in price. . . ."); *Federal Deposit Insurance Corporation v. Webb*, 464 F.Supp. 520, 526 (E.D.Tenn.1978) ("The reader is referred to *Restatement of Security* . . . . Comment (a) . . . provides, 'The pledgee is not liable for a decline in the value of the pledged instruments, even if timely action could have prevented such decline.' "); *Federal Deposit In-* *surance Corporation v. Air Atlantic, Inc.*, 389 Mass. 950, 452 N.E.2d 1143, 1147 (1983)(court rejected the debtor's argument that summary judgment was improper on its counterclaim alleging commercial unreasonableness when pledged stock was not sold sooner and the market declined "ruinously . . . [and] notorious[ly] and a matter of public knowledge."); *Marriott Employees' Federal Credit Union v. Harris*, 897 S.W.2d 723 (Ct.App.Tenn.1995)(citing *Capos*, the court rejected the debtor's claim that the lender had a duty to monitor the market value of the pledged stock securing the loan.)

reasonable manner. Title 12A O.S.2001 § 1–9–627(b), provides that a disposition of collateral is made in a commercially reasonable manner if the disposition is made at the price current in any recognized market at the time of the disposition. There is no dispute that this is exactly what Bank did.

## CONCLUSION

¶ 21 Based on our review of the record, the undisputed facts, and the law, we affirm the trial court's grant of summary judgment.

¶ 22 **AFFIRMED.**

WISEMAN, C.J., and FISCHER, P.J., concur.